William French SMITH,* successor to
Benjamin R. Civiletti, Attorney
General, Appellant,

v.

Eduardo P. PANGILINAN, et
al., Appellees.

No. 79–4437.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 19, 1980.

Decided July 31, 1981.

As Amended on Denial of Rehearing and
Rehearing En Banc Oct. 1, 1981.

* Substituted under Rule 43(c)(1), F.R.App.P.

Robert J. Erickson, Washington, D. C., for appellant.

Michael A. White, Saipan, Northern Mariana Islands, for appellees.

Before MERRILL, DUNIWAY and TANG, Circuit Judges.

DUNIWAY, Circuit Judge:

The Attorney General of the United States appeals from the district court's denial of his motions to intervene brought under Rule 24(a) and Rule 24(b), F.R.Civ.P. We reverse.

## I. *Facts.*

Since 1947, the United States has governed the Northern Mariana Islands, which are part of a larger area known as Micronesia, under the title "Trust Territory of the Pacific Islands." *See* Trusteeship Agreement for the Former Japanese Mandated Islands, July 18, 1947, 61 Stat. 3301, T.I.A.S. No. 1665.

In 1975, the United States and the people of the Northern Mariana Islands entered into an agreement entitled "Covenant to Establish a Commonwealth of Northern Mariana Islands in Political Union with the United States of America." The Covenant was approved by the Congress, on March 26, 1976. *See* Pub.L. 94–241, 90 Stat. 263 (1976), *reprinted in* 48 U.S.C. § 1681 app., at 1409 (1976). The Covenant delineates the political relationship between the United States and the Northern Marianas government, and governs the latter's evolution from trusteeship status to commonwealth status.

Relevant here are the Covenant sections pertaining to nationality and citizenship. Article III, Section 301 of the Covenant provides that Trust Territory citizens and noncitizens meeting certain domicile requirements will become United States citizens in 1981.[1] Prior to 1981, Article III, Section 304 of the Covenant confers some of the rights inhering in United States citizen-

---

1. Article III, Section 301 of the Covenant provides:

   The following persons and their children under the age of 18 years on the effective date of this Section, who are not citizens or nationals of the United States under any other provision of law, and who on that date do not owe allegiance to any foreign state, are declared to be citizens of the United States, except as otherwise provided in Section 302:

   (a) all persons born in the Northern Mariana Islands who are citizens of the Trust Territory of the Pacific Islands on the day preceding the effective date of this Section, and who on that date are domiciled in the Northern Mariana Islands or in the United States or any territory or possession thereof;

   (b) all persons who are citizens of the Trust Territory of the Pacific Islands on the day preceding the effective date of this Section, who have been domiciled continuously in the Northern Mariana Islands for at least five years immediately prior to that date, and who, unless under age, registered to vote in elections for the Mariana Islands District Legislature or for any municipal election in the Northern Mariana Islands prior to January 1, 1975; and

   (c) all persons domiciled in the Northern Mariana Islands on the day preceding the effective date of this Section, who, although not citizens of the Trust Territory of the Pacific Islands, on that date have been domiciled continuously in the Northern Mariana Islands beginning prior to January 1, 1974. Pub.L. 94–241, 90 Stat. 263 (1976), *reprinted in* 48 U.S.C. § 1681 app., at 1410 (1976).

   Section 301 becomes effective, under § 1003(c) of the Covenant, upon the termination of the trusteeship agreement with the United Nations. *See* 90 Stat. at 277, 48 U.S.C. § 1691 app., at 1415. The trusteeship agreement is presently scheduled to terminate in 1981.

ship. Effective in 1978,[2] Section 304 provides: "Citizens of the Northern Mariana Islands will be entitled to all privileges and immunities of citizens in the several States of the United States.[3]

The Covenant provides, in Article II, section 201 that "[t]he people of the Northern Mariana Islands will formulate and approve a Constitution and may amend their Constitution pursuant to the procedures provided therein." Pub.L. 94–241, 90 Stat. at 265 (1976), *reprinted in* 48 U.S.C. § 1681 app., at 1409 (1976). The Constitution became effective on January 8, 1978, under the authority of a Presidential proclamation issued October 24, 1977. *See* Presidential Proclamation No. 4534, 42 Fed.Reg. 56,593 (1977), *reprinted in* 48 U.S.C. § 1681 app., at 1405 (Supp. I 1977). There is a Schedule of Transitional Matters in the Constitution, Section 8 of which contains an "Interim Definition of Citizenship" that is identical to the provisions of Article III, Section 301, of the Covenant.[4]

In 1978, the "Certificate of Identity Act of 1978" was adopted by the Northern Marianas Commonwealth Legislature. The title of the Certificate of Identity Act states its purpose:

**2.** Section 304 became effective on January 8, 1978 under the authority of a Presidential proclamation No. 4534, 42 Fed.Reg. 56,593 (1977), *reprinted in* 48 U.S.C. § 1681 app., at 1405 (Supp. I 1977).

**3.** *See* § 304 of the Covenant, Pub.L. 94–241, *supra*, 90 Stat. at 266, 48 U.S.C. § 1681 app., at 1410.

**4.** Section 8 of the Schedule to the Constitution provides:

> *Interim Definition of Citizenship.* For the period from the approval of the Constitution by the people of the Northern Mariana Islands to the termination of the Trusteeship Agreement, the term United States citizen or United States national as used in the Constitution includes those persons who, on the date of the approval of the Constitution by the people of the Northern Mariana Islands, do not owe allegiance to any foreign state and who qualify under one of the following criteria:
> (a) persons who were born in the Northern Mariana Islands, who are citizens of the Trust Territory of the Pacific Islands on the

To establish a procedure for the issuance of a Certificate of Identity to all persons in the Northern Mariana Islands who will derive citizenship of the United States of America upon termination of the Trusteeship Agreement and who are entitled to all the privileges and immunities of citizens in the several states of the United States; ...

This purpose is more fully stated in Section 2 of the Act:

> The purpose of this Act is to establish a procedure to identify those persons in the Northern Mariana Islands who are interim citizens of the United States pursuant to the provisions of the Constitution of the Northern Marianas, Schedule on Transitional Matters, Section 8, who are entitled to all privileges and immunities of citizens in the several states of the United States pursuant to Article III, Section 304, of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America; to provide for the issuance of a Certificate of Identity thereto; ...

> date of the approval of the Constitution by the people of the Northern Mariana Islands, and who on that date are domiciled in the Northern Mariana Islands or in the United States or any territory or possession thereof;
> (b) persons who are citizens of the Trust Territory of the Pacific Islands on the date of the approval of the Constitution by the people of the Northern Mariana Islands, who have been domiciled continuously in the Northern Mariana Islands for at least five years immediately prior to that date, and who, unless under age, registered to vote in the elections for the Mariana Islands District Legislature or for any municipal election in the Northern Mariana Islands prior to January 1, 1975; or
> (c) persons domiciled in the Northern Mariana Islands on the date of the approval of the Constitution by the people of the Northern Mariana Islands who, although not citizens of the Trustee Territory of the Pacific Islands, on that date have been domiciled continuously in the Northern Mariana Islands beginning prior to January 1, 1974.

Section 3 of the Act defines the persons who are to receive Certificates of Identity.[5] This section is substantially identical to Article III, section 301 of the Covenant and to Section 8 of the Schedule of Transitional Matters of the Constitution. The certificates identify the holder as a citizen of the Commonwealth of the Northern Mariana Islands in Political Union with the United States. The United States government gives certificate holders unrestricted access to the United States, and American consular protection.

On January 17, 1979, a class action was filed in the District Court for the Northern Mariana Islands against the Commonwealth Immigration Officer and the Governor of the Northern Mariana Islands. The plaintiffs, representing themselves and 120 similarly situated Filipinos, had previously been denied certificates of identity by the Northern Marianas government. The plaintiffs alleged that they had been continuously domiciled in the Northern Mariana Islands since January 1, 1974, and that they owed no allegiance to any foreign state. From these facts, the plaintiffs contended that they met all the requirements of section 8 of the Transitional Schedule of the Northern Mariana Constitution and were therefore entitled to certificates of identity as authorized under the Certificate of Identity Act. The defendants responded by denying the factual allegations underlying the plaintiffs' claim.

On February 28, 1979, the Attorney General moved on behalf of the United States to intervene as a party defendant. He argued that the United States has a special interest in contesting the plaintiffs' claim to certificates of identity which would be impaired if intervention was denied. The Attorney General moved alternatively for permissive intervention.

Following a hearing, the district court denied both intervention motions. Although the court agreed that the grant of United States citizenship was a matter of concern to the United States, it concluded that the litigation did not involve the issue of United States citizenship or the Covenant sections dealing with United States citizenship. The court concluded that intervention was not warranted, because the United States would not be adversely affected by the outcome of the case and its ability to protect its interest under Covenant Section 301 would not be impaired when the section became effective in 1981.

## II. Intervention as of Right.

Rule 24(a) of the Federal Rules of Civil Procedure authorizes intervention as of right if an applicant satisfies a four-part test: (1) the applicant's motion must be timely; (2) the applicant must assert an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that with-

---

**5.** Section 3 of the Certificate of Identity Act provides:

Section 3. The Governor through the Chief of Immigration ˙shall issue Certificates of Identity to all persons who, on the date of approval of the Constitution (March 6, 1977) by the people of the Northern Mariana Islands, did not owe allegiance to any foreign state and who qualify under one of the following criteria:

a) persons who were born in the Northern Mariana Islands, who are citizens of the Trust Territory of the Pacific Islands on the date of the approval of the Constitution by the people of the Northern Mariana Islands, and who on that date are domiciled in the Northern Mariana Islands or in the United States or any territory or possession thereof;

b) persons who are citizens of the Trust Territory of the Pacific Islands on the date of the approval of the Constitution by the people of the Northern Mariana Islands, who have been domiciled continuously in the Northern Mariana Islands for at least five years immediately prior to that date, and who, unless under age, registered to vote in elections for the Mariana Islands District Legislature or for any municipal election in the Northern Mariana Islands prior to January 1, 1975; or

c) persons domiciled in the Northern Mariana Islands on the date of the approval of the Constitution by the people of the Northern Mariana Islands, who, although not citizens of the Trust Territory of the Pacific Islands, on that date have been domiciled continuously in the Northern Mariana Islands beginning prior to January 1, 1974.

out intervention the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the other parties. F.R.Civ.P. 24(a)(2). *See also County of Fresno v. Andrus*, 9 Cir., 1980, 622 F.2d 436, 438.

■ The principal issue here is whether the Attorney General has an "interest" in the underlying action within the meaning of Rule 24(a). To meet this requirement, an applicant for intervention need not show that he has a legal or equitable interest in jeopardy. *Id.* at 438; *Blake v. Pallan*, 9 Cir., 1977, 554 F.2d 947, 952. An applicant, however, must show that he has a "protectable interest" in the outcome of the litigation of sufficient magnitude to warrant inclusion in the action. *See Donaldson v. United States*, 1971, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580.

■ We hold that the Attorney General has such a protectable interest in this case. It is true that the case involves a Certificate of Identity to be issued by the Government of the Northern Marianas under an Act of the legislature of that government. If that were all that is involved, we would agree with the district court. But the case is not so simple.

As we have seen, the title of the Act states that its purpose is to establish a procedure "for the issuance of a Certificate of Identity to all persons in the Northern Mariana Islands who will derive citizenship of the United States of America upon termination of the Trusteeship Agreement...." That is what Article III, section 301 of the Covenant provides for. Section 2 of the Act, quoted, *supra*, enlarges upon the purpose and expressly ties the Certificate of Identity to Article III, Section 304 of the Covenant and Section 8 of the Schedule of Transitional Matters of the Constitution of the Northern Marianas.

The definition of persons who will derive their citizenship of the United States appears in Article III, Section 301 of the Covenant, in Section 8 of the Schedule of Transitional Matters of the Constitution of the

Northern Marianas, and in Section 3 of the Certificate of Identity Act. These definitions are in substance, and almost verbatim, the same. Thus, the Certificate of Identity issued under the Act is designed, expressly, to identify those persons who will become citizens of the United States, and the definition in Section 3 of the Act was obviously derived from Section 301 of the Covenant and Section 8 of the Schedule of the Constitution. The three documents could not be more closely tied together. It seems obvious that an objective of the Act was to set up a mechanism to identify the new United States citizens before their U.S. citizenship becomes effective, thus facilitating their exercise of their rights as U.S. citizens, including their right to enter and remain in the United States. No doubt that is why, as the Attorney General tells us, the Immigration and Naturalization Service, by a directive dated January 1978, permits holders of the Certificate of Identity to enter the United States without restriction.

Clearly, the Attorney General, who is charged with administration and enforcement of the laws relating to immigration and naturalization, has an interest in a case in which people seek to have it determined that they are persons who will be entitled to become United States citizens (see the title to the Certificate of Identity Act, *supra*), and that they are, in the interim, as the Certificate of Identity states, entitled, under Section 304 of the Covenant, "to receive Diplomatic and Consular protection of the United States of America." Section 304 of the Covenant also provides, as we have seen, "[c]itizens of the Northern Mariana Islands will be entitled to all privileges and immunities of citizens of the several States of the United States," and that section became effective on January 8, 1978.

Under these circumstances, to say that the Attorney General does not have sufficient interest to bring him within Rule 24(a) is startling, even though it is true that the Certificate of Identity is issued under a law of the Northern Marianas, not under a law of, or by authority of, the United States. Why should the question have to be litigated twice, once in a case arising under the Certificate of Identity Act, and once under

Section 301 of the Covenant? What benefit to anyone is achieved by denying the Attorney General's petition for intervention in this case? All that will be accomplished by the denial is that, if the plaintiffs win this case, they will have to litigate their claims all over again in another case when the Attorney General declines to recognize their Certificates of Identity.

■ The Northern Marianas Commonwealth is no more a foreign nation than is the Commonwealth of Puerto Rico. The district court from which this appeal was taken is not a foreign court. It is a court of the United States, created by the Congress of the United States. *See* 48 U.S.C. § 1694, 1694a. Appeal from that court is to this court. 48 U.S.C. § 1649c. Directly involved is the construction and application of Section 3 of the Certificate of Identity Act. But because that section is, in substance, identical to Section 301 of the Covenant and Section 8 of the Schedule of the Northern Marianas constitution, the construction of the language of any of these sections will be relied upon in construing the others. Surely the doctrine of *stare decisis* will come into play, and, under the view of the district court, the Attorney General will have had no voice in the case in which the decision is made. Revised Rule 24(a) eliminates the requirement that a party cannot intervene in a pending case unless it might be bound, in a *res judicata* sense, by the judgment. *See* 7A C. Wright & A. Miller, *Federal Practice & Procedure* § 1908 at 512–18 (1972). In appropriate circumstances, therefore, *stare decisis* may supply the requisite practical impairment warranting intervention of right. *Atlantis Development Corp. v. United States*, 5 Cir., 1967, 379 F.2d 818, 826–29; *Nuesse v. Camp*, D.C. Cir., 1967, 385 F.2d 694, 702; *In re Oceana International, Inc.*, S.D.N.Y., 1970, 49 F.R.D. 329. *But see Blake v. Pallan*, 9 Cir., 1977, 554 F.2d 947, 954. *Stare decisis* satisfies that requirement in this case.

Moreover, and entirely apart from the doctrine of *stare decisis*, the United States, through the Immigration and Naturalization Service, has committed itself to admit holders of Certificates of Identity to the United States. It is true that the United States could revoke that commitment. But to do would clearly frustrate the purpose of section 301 of the Covenant, and would hardly contribute to good relations with the newly-formed Commonwealth of the Northern Marianas. It would be far better to give the Attorney General a voice in this case.

We cannot hold that the interest of the United States will be adequately represented if the Attorney General is not permitted to intervene. The burden of demonstrating inadequacy of representation is not a heavy one; the Supreme Court has stated:

> The requirement of the Rule is satisfied if the applicant shows that representation of his interest "may be" inadequate; and the burden of making that showing should be treated as minimal.

*Trbovich v. United Mine Workers of America*, 1972, 404 U.S. 528, 538, n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (citation omitted).

The local interests of the Northern Marianas officials and the interest of the United States in deciding who may enter the United States and who may become a United States citizen are likely to differ. Defendants below (the Northern Marianas officials) acknowledged in a memorandum supporting intervention that their interests differ from those of the United States (Clerk's Record at 12). Such an acknowledgment by a present party to the suit is evidence of inadequate representation (*see State of New Mexico v. Aamodt*, 10 Cir., 1976, 537 F.2d 1102, 1106).

We conclude that the Attorney General is entitled to intervene as of right.

### III. *Permissive Intervention.*

■ What we have said about Intervention as of right is even more applicable to permissive intervention. Although a district court possesses broad discretion to grant or deny permissive intervention, the court's decision is nevertheless reviewable on appeal. *Spangler v. Pasadena City Board of Education*, 9 Cir., 1977, 552 F.2d 1326, 1329. We think that it was unreasonable for the district court to conclude that the interpretive issues inhering in the Certificate of Identity Act and Section 301 of the Covenant did not have enough in common to justify prolonging the adjudication of this case.

■ The plaintiffs contend that the Attorney General failed to make a timely application for permissive intervention. While it is true that the Attorney General did not mention permissive intervention under Rule 24(b) in the actual motion to intervene, the memorandum in support of that

motion concludes with the following paragraph:

> In any event, the Intervenor may be permitted to intervene by the court pursuant to F.R.C.P. Rule 24(b) as the intervention will not delay or prejudice the rights of the original parties.

The district court addressed the question of permissive intervention, and we likewise hold this statement sufficient to satisfy the requirements of Rule 24(c).

### Conclusion

The orders appealed from are reversed and the case is remanded to the district court with directions to permit the Attorney General to intervene.