769 F.2d 583
 3 Fed.R.Serv.3d 978
 UNITED STATES of America, Plaintiff-Appellee,
v.
$129,374 IN UNITED STATES CURRENCY, Defendant,
and All Related Actions,
Gerald M. Geiger, as conservator of the estate of Lewis
Michael Geiger, Applicant for Intervention-Appellant.
 No. 84-6419.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 4, 1985.
Decided Aug. 21, 1985.
 
 Robert Plaxico, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.
 Howard Finkelstein, Jenkins & Perry, San Diego, Cal., for applicant for intervention-appellant.
 Appeal from the United States District Court for the Southern District of California.
 Before WALLACE, TANG and WIGGINS, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 Gerald Geiger (Gerald) appeals from the district court's denial of his motion to intervene in a forfeiture proceeding under 21 U.S.C. Sec. 881(a)(6) concerning property belonging to his fugitive brother, Lewis Geiger (Lewis). We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 2
 * This matter stems from a search pursuant to a warrant of Lewis' home that was conducted on April 22, 1983. The search produced significant quantities of cocaine. The officers also seized United States currency, gold and silver coins and ingots, and three vehicles on the ground that they were believed to be the proceeds of unlawful narcotics transactions, and thus forfeitable under 21 U.S.C. Sec. 881(a)(6). Lewis was arrested later that day, along with two others who lived with him.
 
 
 3
 Lewis was released on bail upon the posting of a $150,000 personal surety bond. Gerald and Elaine Geiger, Lewis' brother and sister-in-law, signed as cosureties and secured the bond with their home. After the district court rejected Lewis' challenge to the validity of the search warrant, he waived his right to a jury trial and submitted the criminal case for decision on stipulated facts. He was found guilty on three counts of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. Secs. 841(a)(1) and 846, possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1), and possession of an unregistered machine gun in violation of 26 U.S.C. Secs. 5861(d), 5871.
 
 
 4
 In June and July of 1983, while the criminal charges against Lewis were still pending, the government initiated the present forfeiture proceedings under 21 U.S.C. Sec. 881(a)(6) against various items seized from Lewis' residence and his person. Six separate complaints were filed and subsequently consolidated. The items involved here include fifty 100-ounce silver bars, seventy-two 1-ounce gold pieces, seven 10-ounce silver pieces, U.S. currency ($129,374 and $1,013), a 1947 Ford Woodie Wagon, and a 1982 Jeep Wagoneer.
 
 
 5
 Lewis and his codefendant girlfriend filed claims contesting the forfeiture of the silver, the gold, and the $129,374 in currency. Lewis separately contested the forfeiture of the two vehicles, and the $1,013 in currency. His lawyers filed claims contesting the forfeiture of all of these items on the basis of Lewis' purported assignment of the property subsequent to his arrest.
 
 
 6
 Lewis' sentencing was scheduled for December 5, 1983. He failed to appear and the sentencing hearing was continued until the following day. He again failed to appear. The court then issued a warrant and declared his personal surety bond forfeited. On December 30, 1983, the government filed a motion for judgment on default on the forfeited bond.
 
 
 7
 Before the hearing on that motion, Gerald filed a petition in state court to declare himself conservator of Lewis' estate. The state court approved Gerald's conservatorship on April 13, 1984.
 
 
 8
 Gerald, in his capacity as conservator of Lewis' estate and in his personal capacity as cosurety of Lewis' bond, moved on May 4, 1984 to set aside the forfeiture of the bail bond. Acknowledging the absence of any evidence that Lewis was dead, Gerald did not contest the entry of judgment against Lewis' estate but asked that judgment not be entered against himself and his wife--the innocent cosureties.
 
 
 9
 After numerous continuances, a hearing was held on the government's motion for judgment of default on the bond and the motion to set aside forfeiture. After noting Lewis' past criminal record, the substantial sentence recommended by the probation department of which Lewis was aware, and the circumstances of Lewis' disappearance, the district court found against Lewis' estate and against Gerald and Elaine Geiger. Judgment in the bail bond forfeiture was entered on August 2, 1984.
 
 
 10
 On May 4, 1984, the government moved for summary judgment in the consolidated forfeiture proceedings. The government argued in part that because Lewis was a fugitive from justice, he had disentitled himself to contest the forfeiture.
 
 
 11
 Gerald moved to intervene as conservator of Lewis' estate both as of right and permissively under Fed.R.Civ.P. 24(a)(2), (b)(2). Gerald also filed an opposition to the government's summary judgment motion. No other opposition to the government's summary judgment motion was filed. Although the government initially stipulated to intervention by Gerald, it subsequently urged the district court to deny the conservator's motion to intervene on the ground that he lacked standing to contest the forfeiture because he stood in the shoes of the fugitive defendant.
 
 
 12
 The district court denied the motion to intervene. Relying principally on Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) (per curiam) (Molinaro ), and Conforte v. Commissioner, 692 F.2d 587 (9th Cir.1982) (Conforte ), the court held that Lewis had disentitled himself from contesting the forfeiture and thus the conservator who merely stood in Lewis' shoes lacked standing to intervene. Accordingly, the district judge ordered stricken from the record the conservator's brief in opposition to the government's summary judgment motion. The order denying intervention was entered on August 22, 1984.
 
 
 13
 On August 20, 1984, the district court held a hearing on the government's motion for summary judgment, and found that the government had met its burden of demonstrating probable cause for the forfeiture under 21 U.S.C. Sec. 881(a)(6). No evidence was introduced to refute the government's showing of probable cause. As a result, the district court granted the government's motion for summary judgment, and entered its order on October 15, 1984.
 
 
 14
 On October 22, 1984, Gerald, as conservator of Lewis' estate, timely filed a notice of appeal seeking review of both the district court's denial of his motion for intervention and the summary judgment in favor of the government.
 
 II
 
 15
 Generally, a party is entitled to intervention as of right if he satisfies the four-part test set forth in rule 24(a)(2), Fed.R.Civ.P.:
 
 
 16
 (1) the applicant's motion must be timely; (2) the applicant must assert an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that without intervention the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the other parties.
 
 
 17
 Smith v. Pangilinan, 651 F.2d 1320, 1323-24 (9th Cir.1981) (Smith). Rule 24(b)(2), Fed.R.Civ.P., provides for permissive joinder "when an applicant's claim or defense and the main action have a question of law or fact in common." We review a district court's order denying intervention as of right de novo, see, e.g., Smith, 651 F.2d at 1324-25, except for the issue of timeliness, which is reviewed for abuse of discretion. United States v. Oregon, 745 F.2d 550, 552 (9th Cir.1984). In contrast, permissive intervention is committed to the broad discretion of the district court. See Smith, 651 F.2d at 1325; Blake v. Pallan, 554 F.2d 947, 951 n. 5 (9th Cir.1977).
 
 A.
 
 18
 The district court denied the conservator's motion to intervene, agreeing with the government that he lacked standing to contest the forfeiture. The court reasoned that under the rationale of Molinaro, 396 U.S. at 366, 90 S.Ct. at 498, and Conforte, 692 F.2d at 590, Lewis and the conservator, who stood in Lewis' shoes, were disentitled from contesting the government's civil forfeiture claim.
 
 
 19
 The conservator essentially argues that the district court erroneously confused the concepts of standing and rule 24's requirements for intervention. He asserts that he demonstrated a sufficient interest in the property involved in the forfeiture proceeding to satisfy any standing requirements of rule 24, and therefore he should have been allowed to intervene as of right. He contends that the district court's discussion of the Molinaro/Conforte disentitlement doctrine was premature. That issue, he continues, should have been reserved until the hearing on the government's motion for summary judgment, at which time the conservator could have presented evidence bearing upon the issue of whether Lewis was in fact a fugitive.
 
 
 20
 To the extent that the district court's order is based upon a theory of standing, we agree with the conservator. We admit that this is not an issue on which we have given clear guidance. We have held that a motion to intervene may be denied when an applicant fails to demonstrate standing to pursue his claim, e.g., DuPree v. United States, 559 F.2d 1151 (9th Cir.1977). Nevertheless, the principal focus of a motion to intervene under rule 24 is whether an applicant has "show[n] that he has a 'protectable interest' in the outcome of the litigation of sufficient magnitude to warrant inclusion in the action." Smith, 651 F.2d at 1324. Lewis certainly has an interest in defending an action to forfeit his property. The conservator of his estate, who stands in his shoes under state law, necessarily has the same protectable interest in the property subject to forfeiture. We conclude that it would be inappropriate to affirm the district court on the ground that the conservator lacked standing to intervene under rule 24.
 
 B.
 
 21
 We may affirm a decision of the district court, however, on any ground finding support in the record. Salmeron v. United States, 724 F.2d 1357, 1364 (9th Cir.1983). If the district court decision is correct, it must be affirmed, even if the court relied on wrong grounds or wrong reasoning. Keniston v. Roberts, 717 F.2d 1295, 1300 & n. 3 (9th Cir.1983). As part of her reasoning, the district judge relied upon Molinaro and Conforte. Although we disagree with the district court's holding that the conservator lacked standing to intervene, the Molinaro/Conforte disentitlement doctrine is implicit in the district court's reasoning and we therefore review this appeal on the basis of whether that doctrine bars the conservator's attempt to intervene in this proceeding.
 
 
 22
 In Molinaro, the Supreme Court refused to adjudicate the merits of an appeal from a criminal conviction on the ground that the defendant was a fugitive from justice. 396 U.S. at 366, 90 S.Ct. at 498. Recognizing that the defendant's fugitive status did not render the case moot, the Court nonetheless dismissed the appeal because it concluded that the defendant's fugitive status "disentitle[d] [him] to call upon the resources of the Court for determination of his claims." Id.
 
 
 23
 In Conforte, we extended the Molinaro disentitlement doctrine to a civil proceeding. 692 F.2d at 589-90. In that case, Joseph Conforte and his wife sought review of a tax court decision upholding tax deficiencies and penalties that had been assessed against them. Id. at 589. When the appeal came before us, Joseph Conforte was a fugitive from justice as a result of his criminal conviction for tax evasion. Id. The civil and criminal cases were "related components of a general tax evasion scheme." Id. at 590. Importing the Molinaro doctrine from the criminal context, we refused to pass on the merits of his individual appeal and dismissed it. Id. at 589-90. We reasoned that an individual who was flouting legal process has no entitlement to engage the court's resources to adjudicate his claims in an action related to his prior criminal conviction. Id. at 589-90.
 
 
 24
 In United States v. $83,320 in United States Currency, 682 F.2d 573 (6th Cir.1982), however, the Sixth Circuit refused to extend the Molinaro disentitlement doctrine to an appeal from a judgment in favor of the government in a civil forfeiture proceeding under the same statute involved here, 21 U.S.C. Sec. 881(a)(6). Finding Molinaro and its progeny sufficiently distinguishable, that court rejected the government's argument that the appeal should be dismissed. See id. at 576.
 
 
 25
 The Second Circuit is the only other circuit which has addressed the applicability of the Molinaro disentitlement doctrine in civil forfeiture proceedings. In United States v. $45,940 in United States Currency, 739 F.2d 792 (2d Cir.1984), the claimant, a fugitive from justice, sought review of a district court judgment granting forfeiture under section 231 of the Bank Secrecy Act of 1970, 31 U.S.C. Sec. 5316. That statute expressly requires the government to give notice to "any person who appears to have an interest in the seized property of the property's liability to forfeiture and of the claimant's right to petition the Secretary of the Treasury for remission or mitigation of the forfeiture." Id. at 797, quoting United States v. $8,850 in United States Currency, 461 U.S. 555, 557, 103 S.Ct. 2005, 2008, 76 L.Ed.2d 143 (1983) (footnote omitted). Proper notice was given and the fugitive defendant was the sole claimant. Id. at 798. In these circumstances, the Second Circuit found the Molinaro doctrine applicable. In so holding, that court acknowledged the Sixth Circuit's view in United States v. $83,320, but declined to adopt it. See id. at 797. The Second Circuit recognized the Sixth Circuit's concern for the rights of innocent third parties, but concluded that the Sixth Circuit failed to "consider that the government was seeking to dismiss only the fugitive's appeal which would not prejudice any other claimant." Id.
 
 
 26
 The issue before us in this case is one of first impression: whether the Molinaro/Conforte disentitlement doctrine should bar intervention in a civil forfeiture proceeding by a fugitive's successor in interest. We conclude that the limited extension of that doctrine to this situation is compelled as a matter of sound policy.
 
 
 27
 The Molinaro/Conforte disentitlement doctrine clearly bears on whether the conservator is entitled to pursue a claim in the forfeiture proceeding on behalf of the fugitive's estate. We hold that Conforte would bar any defense by Lewis in the forfeiture action. The conservator's claim is solely derivative of any claim or defense that Lewis may maintain. If the fugitive is deprived of presenting any claim or defense in this action as the result of his fugitive status, the conservator of his estate must suffer the same consequences when he seeks to advance the same claim or defense.
 
 
 28
 Moreover, the proper time to address this issue is during the motion to intervene, which requires an examination as to whether the applicant has any cognizable, protectable claim. No useful purpose would be served by putting off discussion of this issue to the hearing on the merits of the forfeiture action itself. Rather, permitting intervention at this stage would only add unnecessary complexity to the forfeiture proceeding.
 
 
 29
 Nor does our holding result in any further prejudice to Lewis' interests. It is important to recognize that Lewis has complete control over the protection of his property interests in this forfeiture proceeding; if he finds his interests are sufficiently worth defending, he can terminate his fugitive status and present his own defense. This is not a situation in which a conservator has been appointed to represent someone who is incapable, either physically, mentally or legally (such as a minor), of adequately representing his interests. Here, Lewis is solely responsible for his plight.
 
 
 30
 For these reasons, we conclude that each of the conservator's several objections to this result is unpersuasive. We will address each in turn.
 
 
 31
 First, the conservator characterizes the Molinaro doctrine as being limited to criminal or quasi-criminal appeals. Conforte, however, involved a purely civil proceeding. We pointed out that "there is no indication in the Court's decision [in Molinaro ] that the rule stated has any less vitality in civil cases." 692 F.2d at 589. Rather, we observed that "[t]o the contrary, ... the [Molinaro ] rule should apply with greater force in civil cases where an individual's liberty is not at stake." Id. (emphasis added). See also Doyle v. United States Department of Justice, 668 F.2d 1365, 1365-66 (D.C.Cir.1981) (per curiam) (Freedom of Information Act action filed by a fugitive was barred under Molinaro ), cert. denied, 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982); Broadway v. City of Montgomery, 530 F.2d 657, 659 (5th Cir.1976) (appeal from summary judgment in civil rights action brought by fugitive dismissed under Molinaro ).
 
 
 32
 The conservator also asserts that Molinaro and its progeny only delay the time when an appeal will be heard and do not completely foreclose the right to judicial review. We also disagree with this argument. Although in some cases, e.g., Conforte, 692 F.2d at 590, courts have generously allowed a fugitive leave to seek reinstatement of the appeal should he surrender to the authorities within a given period, a court clearly has the power to dismiss the appeal without granting any such grace period. Indeed, in Molinaro, the Court did not hold the appeal in abeyance; it dismissed the appeal entirely. 396 U.S. at 366, 90 S.Ct. at 498.
 
 
 33
 Next, Gerald argues that the Molinaro disentitlement doctrine should apply only when the fugitive seeks relief based upon a claim directly related to the prior criminal conviction. We need not decide this issue. It is clear from the facts of this case that Lewis' criminal conviction and the property involved in this civil forfeiture proceeding are integrally related parts of the same unlawful drug dealing scheme. Thus, as we observed in Conforte, "[w]e need not decide whether Molinaro demands such a nexus requirement." 692 F.2d at 590.
 
 
 34
 The conservator further asserts that application of the Molinaro disentitlement doctrine in this case works "to bar any party from contesting these forfeitures." He maintains that individuals who have a potential interest in the property at issue are thereby deprived of their due process rights. But the government did not argue, nor did the district court hold, that all individuals are precluded from intervening in the civil forfeiture proceeding because of Lewis' fugitive status. Rather, the district court's denial of intervention was limited to the conservator who stood in Lewis' shoes. Indeed, Lewis' girlfriend and his lawyers were not barred by the Molinaro/Conforte disentitlement doctrine from pursing their claims to the property. See, e.g., Conforte, 692 F.2d at 590-94 (deciding claims of Sally Conforte, who was not a fugitive). Other individuals with a cognizable interest in the property could have sought leave to intervene. See id.
 
 
 35
 In raising this issue, the conservator draws our attention to the Sixth Circuit's decision in United States v. $83,320, 682 F.2d at 576. He argues that the Sixth Circuit's concern for the rights of innocent third parties "has even greater application ... where the party seeking to defend against the government's claim is not the missing defendant but rather the conservator of the missing defendant's estate who owes a fiduciary duty to the estate's creditors and beneficiaries." He also emphasizes that unlike the forfeiture statute involved in the Second Circuit's decision in United States v. $45,940, 739 F.2d at 793 (31 U.S.C. Sec. 5316), the forfeiture statute involved in the present case does not provide for notifying any person who appears to have an interest in the property, such as creditors, of the forfeiture proceeding.
 
 
 36
 We decline to adopt the Sixth Circuit's reasoning. Clearly, the individual who stands to gain most by allowing the conservator to intervene is Lewis. Innocent creditors and beneficiaries, if any, would benefit only secondarily. Moreover, mere speculation that innocent third parties might have an interest in the forfeited property is not sufficient to overcome the application of the Molinaro/Conforte disentitlement doctrine in this case. Furthermore, the conservator cannot complain of lack of notice to other interested parties. The record clearly reflects that individuals with an interest in the property had notice of the forfeiture proceedings. The conservator himself was an individual creditor and could have sought leave to intervene in that capacity.
 
 
 37
 The conservator's concern for the rights of the Lewis' creditors and beneficiaries is commendable, but he lacks standing to represent their rights because he represents only Lewis' estate. The fact that the conservator is charged under Cal.Prob.Code Sec. 2462 (West 1981) with the fiduciary responsibility to prosecute and defend all claims involving property in which the estate has an interest does not change this conclusion. In these circumstances, no one was deprived of their due process rights. See United States v. $45,940, 739 F.2d at 796-97.
 
 
 38
 The conservator also maintains that this case differs from Molinaro because here, the fugitive defendant did not initiate the proceedings in absentia to seek some type of affirmative relief from the courts. Rather, Lewis, and the conservator as his successor in interest, seek only to defend against an action initiated by the government. We need not decide that issue. Where, as here, Lewis had notice of the already filed forfeiture proceedings and voluntarily elected to flee the jurisdiction of the courts, the conservator is bound by Lewis' decision to forgo defending the forfeiture action.
 
 
 39
 Finally, we reject the conservator's argument that the district court ruled prematurely on his motion to intervene, as well as his contention that the district judge erred by incorporating by reference her findings from previous hearings. These claims of error are premised on the conservator's erroneous belief that he could relitigate the issue of whether Lewis willfully absented himself from the court's jurisdiction when the merits of the forfeiture action were heard.
 
 
 40
 The record reveals that in making her determination on the conservator's motion for intervention, the district judge incorporated by reference the record of the sentencing hearing and the record of the bond forfeiture hearings. The same district judge presided over those various hearings.
 
 
 41
 The critical factual determination incorporated by the district judge was her previous finding that Lewis voluntarily fled the jurisdiction. This factual determination was made at the bond forfeiture hearing at which Gerald appeared as a party, both in his personal and representative capacities. The conservator merely sought to relitigate this factual determination at the hearing on the motion to intervene. The district court properly rejected this attempt.
 
 
 42
 As a party at the prior hearing, the conservator is collaterally estopped from relitigating an issue that was previously decided. See Davis & Cox v. Summa Corp., 751 F.2d 1507, 1518-19 (9th Cir.1985). See also United States v. $149,345 in United States Currency, 747 F.2d 1278, 1280 (9th Cir.1984) (res judicata applies to forfeiture actions under 21 U.S.C. Sec. 881(a)(6) ). There is no question that the conservator had a full and fair opportunity at the bond forfeiture hearing to contest a finding that Lewis was a fleeing felon, nor is there any question that the conservator had a sufficient incentive--both as representative of Lewis' estate and with regard to his own personal interests as surety--to put forth his best defense. The conservator did not attempt to offer any newly obtained evidence to indicate that the prior finding of fugitive status was erroneous.
 
 III
 
 43
 The conservator also challenges the district court's entry of summary judgment on the ground that he was not given a reasonable opportunity to conduct discovery in order to challenge the government's motion. This argument is meritless in light of our holding affirming the district court's denial of the conservator's motion to intervene.
 
 
 44
 The conservator's argument is based on the erroneous assumption that he may challenge the district court's order granting summary judgment. "The general rule is that one who was not a party of record before the trial court may not appeal that court's judgment" unless extraordinary circumstances are present. Washoe Tribe v. Greenley, 674 F.2d 816, 818 (9th Cir.1982); In re Proceedings Before Federal Grand Jury, 643 F.2d 641, 643 (9th Cir.1981). The record in this case fails to reveal extraordinary circumstances to warrant departure from our general rule. See id. at 643.
 
 
 45
 AFFIRMED.