HURLEY, DANIEL T.K., Associate Judge.
This appeal emanates from a civil forfeiture proceeding under section 932.704, Florida Statutes (1985). It presents two questions: (1) whether the claimant, who possessed a power of attorney from the owner of the vessel, had standing to contest the forfeiture, and (2) whether the trial court erred by granting forfeiture. We hold that the claimant had standing and that the proof was inadequate to justify a forfeiture. Consequently, we reverse.
The Sheriff of Indian River County initiated a civil forfeiture proceeding, pursuant to section 932.704, Florida Statutes (1985), to obtain forfeiture of a 1983 Wellcraft Scarab boat. The forfeiture was opposed by appellant Eric Brockschmidt who possessed a power of attorney from the registered owner, Richard Miller. The power of attorney authorized Brockschmidt “[t]o conduct, transact any and all lawful business of whatever nature pertaining to: 1983 Wellcraft Scarab Sport....”
One of the sheriffs key witnesses was an FBI agent who said that a confidential informant had seen contraband drugs on Brockschmidt’s vessel. This informant had provided “very accurate” information on dozens of prior occasions. He gave “a complete description of [Brockschmidt’s] vessel, the colors of the vessel, the length of the vessel, who it was registered to, the Florida registration number, and a distinct peculiarity, that the two power plants are located in a fashion that they stick out from the transom of the vessel.” In addition, the informant provided information about Brockschmidt’s earlier activities which the agent independently verified.
Approximately a week before May 28, 1983, the informant relayed information that Brockschmidt was about to smuggle over a thousand pounds of marijuana into *308 the United States. It would come from Walker’s Cay in the Bahamas. According to the informant, the operation would involve two boats, the Wellcraft Scarab, which Brockschmidt would captain, and a thirty-one foot Bertram named “Slow Poke.” The plan called for the Wellcraft Scarab to carry the contraband while the Bertram would serve as an “interference vessel” and scout the offloading site for law enforcement vessels. The informant said that the smugglers planned to use marine channel sixty-eight or seventy. They would use the code word “sparrow” to communicate with the people on shore at the offloading site. This information was conveyed to the customs authorities and the sheriffs department in Indian River County.
As dusk approached on May 28,1983, the police took up watch around the Sebastian Inlet. They expected the offloading to occur somewhere in northern Indian River County or southern Brevard County. Around 7:30 p.m., the Bertram entered the inlet from the ocean. The police boarded, but found nothing. At about 10:15 p.m., a customs agent stationed in a boat north of the Sebastian Inlet overheard two different conversations on marine channel sixty-eight. “One of them was calling the sparrow, and in turn, he came back with a word that we could not understand and said, I’m waiting on the signal.” Shortly after-wards, a police aircraft flying north of the Sebastian Inlet noticed flashlight signals from shore to sea. A return signal came from a boat about a mile offshore which the pilot later identified as the Wellcraft Scarab. As the plane circled the boat, the pilot noted that “[i]t had no lights on, none at all, no running lights, nothing, except for the light that they were using to signal off and on.” The pilot further testified that “[a]t one time, [the boat] went right up to the breakwater,” where the waves actually break offshore. Several people were on the beach with lights. “There was some type of activity going on. As to exactly what it was, I don’t know,” the pilot admitted. He was adamant, however, in stating that the Wellcraft Scarab went into the area where the people were standing. He was certain it was the Wellcraft Scarab because he noted the unusual manner in which the boat’s engines were mounted on a special bracket that moved the engines aft of the transom of the boat. The pilot radioed this information to the police below and then continued to monitor the scene for thirty to forty-five minutes until the authorities arrived.
When the police vessels reached the site, they were unable to locate any marijuana. A customs boat, however, spotted the Well-craft Scarab approximately two hundred yards offshore as it turned on its running lights and proceeded south toward the Sebastian Inlet. The vessel was going slow and then accelerated to a high rate of speed. The police stopped it in the inlet and found Brockschmidt on board. He told the officers that he had been trolling for dolphin and had experienced engine trouble. Neither fishing gear nor bait was evident and, when the police took control of the vessel, they found that the engines were in good working order. A search of the boat turned up one seed that could not be identified. Also, the police found a yacht registration form from the Sea Lion Marina at Walker’s Cay in the Bahamas. It indicated that Brockschmidt had been on the Bertram at Walker’s Cay on May 3, 1983. The sheriff rested his case.
The defense called two chemists who had examined the seed and some vacuum sweepings taken from the Wellcraft Scarab. They testified that the seed could not be germinated and that the sweepings tested negative for marijuana. Next, the parties stipulated that May 28th was in the height of the turtle egg season. (Thus offering a possible explanation for the presence of people with flashlights on the beach.) The defense then rested.
After hearing final arguments, the trial court made detailed findings of fact and conclusions of law — a practice that is exemplary and for which we express our gratitude. The court concluded that Brock-schmidt lacked standing to contest the forfeiture because he was neither the owner *309 nor a lienholder. The court then adjudicated the merits and found that the sheriff had established probable cause to believe that the Wellcraft Scarab had been used to facilitate the commission of a felony, viz., trafficking in illegal drugs. Because the court was unpersuaded by Brockschmidt’s proof, it granted the petition for forfeiture.
We do not agree with the respected trial judge that Brockschmidt lacked standing to contest the forfeiture. Section 932.-703(2), Florida Statutes (1985), confers standing on an owner to contest a forfeiture. Similarly, section 932.703(3), Florida Statutes (1985), grants standing to a bona fide lienholder to protect his interest. The underlying intent of these provisions is to allow individuals with valid possessory interests in the res to protect those interests by asserting various defenses permitted by the statute. See In re Forfeiture of Approximately Forty-Eight Thousand, Nine Hundred Dollars, 432 So.2d 1382 (Fla. 4th DCA 1983). The statute does not prohibit owners from empowering others to act on their behalf and we can discern no justification to single out this type of a proceeding and hold that an otherwise valid power of attorney would be ineffective. Thus, we hold that Brockschmidt, by virtue of the power of attorney, stood in the shoes of the owner with standing to contest the forfeiture.
We realize that the Legislature designed the forfeiture statute for the express purpose of creating a potent weapon in the battle against crime. See Department of Highway Safety & Motor Vehicles v. Pollack, 462 So.2d 1199 (Fla. 3d DCA 1985). Today’s decision in no way impairs or diminishes the effectiveness of that weapon. For example, one of the defenses now available under the statute to an owner turns on what the owner knew or should have known after reasonable inquiry. Obviously, to assert this defense an owner must participate directly and individually in the forfeiture proceeding. Moreover, by giving effect to a valid power of attorney, we do not suggest that the courts of this state are without remedy to prevent an owner who is a fugitive from justice from litigating by proxy. See United States v. One Hundred and Twenty-Nine Thousand, Three Hundred and Seventy-Four Dollars, 769 F.2d 583 (9th Cir.1985); United States v. Forty-Five Thousand, Nine Hundred and Forty Dollars, 739 F.2d 792 (2d Cir.1984).
The burden of establishing standing in forfeiture proceedings is on the claimant. See United States v. Five Hundred Thousand Dollars, 730 F.2d 1437 (11th Cir.1984); United States v. Three Hundred and Sixty-Four Thousand, Nine Hundred and Sixty Dollars, 661 F.2d 319 (5th Cir.1981). In the case at bar, Brockschmidt relied upon a standard-form, notarized power of attorney in which Richard Miller, the boat’s registered owner, authorized Brock-schmidt “[t]o conduct, transact any and all lawful business of whatever nature pertaining to: 1983 Wellcraft Scarab Sport....” The sheriff, by offering proof of his inability to contact or serve Miller, suggested that Miller might be a fictitious name — a shield to cover Brockschmidt’s true ownership of the vessel. If this were true, of course, Brockschmidt would have standing in his own right. The trial court, however, did not find that Miller was a fictitious name or that the power of attorney was invalid. Rather, it ruled that Brockschmidt failed to satisfy the criteria in the statute and, therefore, lacked standing. This finding distinguishes the case at bar from In re Forfeiture of a Cessna 401 Aircraft, 431 So.2d 674 (Fla. 4th DCA 1983), review denied, 444 So.2d 416 (Fla.1984), where we held that appellant lacked standing because he possessed an invalid assignment from a fictitious or nonexistent assignor. Cf. Lauderdale Investments, Inc. v. Miller, 456 So.2d 539 (Fla. 5th DCA 1984) (assignment executed after seizure ineffective to confer standing on assignee); In re Forfeiture of One ffi Fiberglass Boat, 453 So.2d 207 (Fla. 4th DCA 1984) (claimant shown not to be the owner and, therefore lacked standing).
We now turn to the merits of the case. The procedural backdrop was furnished in *310 In re Forfeiture of Approximately Forty-Eight Thousand, Nine Hundred Dollars, supra, where we held that
[t]he burden of proof in a forfeiture proceeding is allocated in the following manner: The governmental entity seeking forfeiture bears the initial burden of going forward, but it must only show probable cause that the res subject to forfeiture was illicitly used within the meaning of the forfeiture statute. Once the governmental entity has established probable cause, the burden shifts to the claimant to rebut the probable cause showing or, by a preponderance of the evidence, to establish that the forfeiture statute was not violated or that there is an affirmative defense which entitles the claimant to repossession of the item.
Id. at 1385.
“The probable cause necessary here is a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion.” United States v. One 1978 Chevrolet Impala, 614 F.2d 983, 984 (5th Cir.1980); see also Benefield v. State, 160 So.2d 706 (Fla.1964). Applying this standard to the case at bar, we have no hesitancy in holding that the sheriff fully satisfied his initial burden of proof. Once the sheriff demonstrated probable cause, the burden of proof shifted to Brockschmidt. It was Brock-schmidt’s burden to establish, by a preponderance of the evidence, that the vessel had not been used to facilitate the commission of a felony. See United States v. Four Million, Two Hundred Fifty-Five Thousand Dollars, 762 F.2d 895 (11th Cir.1985). Brockschmidt’s evidence on this issue consisted of showing that no contraband was located at the supposed offloading site or on the Wellcraft Scarab. Additionally, by stipulation, he established that May 28th was the height of the turtle egg season which might explain the presence of people with flashlights on the beach. At this point, it was incumbent on the sheriff to come forward with substantial, competent evidence to show that the vessel was employed as an instrumentality in the commission of a felony. We discussed this requirement in Doersam v. Brescher, 468 So.2d 427 (Fla. 4th DCA 1985), and said that
hearsay evidence should not be admitted in a final hearing in forfeiture proceedings and, of course, such evidence may not form the basis for a factfinder’s decision that the property was utilized in the commission of a crime. [Emphasis supplied.]
Id. at 428. In the case at bar, hearsay evidence, i.e., the information supplied by the confidential informant, was properly admitted to establish probable cause, but it could not serve as the basis for forfeiture.[1] Once the claimant introduced some evidence to rebut the showing of probable cause, the sheriff had the burden of substantiating his allegation with substantial, competent evidence. Since he failed to do so, the order of forfeiture cannot stand.
However, due to the recurrence of these issues and pursuant to Article V, Section 3(b)(4), Florida Constitution, see also Rule 9.030(a)(2)(A)(v), Fla.R.App.P., we certify the following questions to be of great public importance:
(1) Is the allocation of the burden of proof as set forth in In re Forfeiture of Approximately Forty-Eight Thousand Nine Hundred Dollars, 432 So.2d 1382 (Fla. 4th DCA 1983), correct?
(2) If so, is hearsay evidence admissible in the probable cause portion of a forfeiture proceeding?
(3) If so, may a forfeiture be based on hearsay evidence alone?
For the reasons set forth in this opinion, the order on appeal is
REVERSED.
DOWNEY, J., and BARKETT, ROSEMARY, Associate Judge, concur.

. Contra United States v. One 56-Foot Yacht Named Tahuna, 702 F.2d 1276 (9th Cir.1983).