**Leon Jose S. De MESA, et al., on behalf of themselves and others similarly situated, Plaintiffs–Appellees,**

v.

**Francisco C. CASTRO, et al., Defendants,**

**Edwin Meese, III., Defendant–Intervenor–Appellant.**

**No. 86–1713.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1987.

Decided April 11, 1988.

Richard A. Olderman, Dept. of Justice, Civil Div., Appellate Staff, Washington, D.C., for defendant-intervenor-appellant.

Michael A. White, White, Novo–Gradac and Thompson, Saipan, CM, for plaintiffs-appellees.

Before SCHROEDER, NELSON and BOOCHEVER, Circuit Judges.

SCHROEDER, Circuit Judge:

The plaintiffs represent themselves and a class of similarly situated individuals who in 1977 renounced Filipino citizenship in order to become citizens of the Commonwealth of the Northern Mariana Islands and eventually permanent citizens of the United States. They filed this action in 1979 against the government of the Northern Marianas seeking "certificates of identity" entitling them to the benefits of United States citizenship during the period preceding termination of United States trusteeship over the Northern Marianas.

This is the third time the case has been before this court. In 1981, we held that because the qualifications for interim citizenship prior to termination of the trusteeship paralleled the qualifications for permanent United States citizenship at expiration of the trusteeship, the United States was entitled to intervene in the action as of right. *Smith v. Pangilinan*, 651 F.2d 1320 (9th Cir.1981). However, during the pendency of the government's appeal on the intervention question, proceedings in the district court were not stayed and the district court considered plaintiffs' case. The district court held that the plaintiffs were entitled to the certificates of identity. We affirmed in the second appeal, *Pangilinan v. Castro*, 688 F.2d 610 (9th Cir.1982). Nevertheless, because the United States had not been a party to the proceedings in the district court, we remanded in order for the court to consider its interests. *Pangilinan v. Castro*, 688 F.2d at 614.

On remand, the United States sought discovery with respect to each member of the plaintiff class, apparently in order to prove that the plaintiffs did not meet the domiciliary requirements of interim citizenship as the United States interpreted those requirements. The district court refused to permit the government to relitigate factual and legal matters previously determined, and held that the United States was estopped to question the qualifications of the plaintiffs because of its failure to intervene during earlier administrative proceedings. The government appeals, arguing that the district court erred in its holding

of estoppel and that our prior decisions required the district court to consider all of the issues the government wished to raise.

We do not reach the estoppel issue. We hold that neither our previous decisions nor the legal framework under which this case arises authorizes the government at this point to conduct a de novo and independent investigation of the qualifications of these plaintiffs for interim citizenship.

The history of this case is intertwined with the transition of the Northern Marianas from trusteeship to commonwealth status. The legal course of that transition is set forth in detail in our previous decisions and we will summarize only briefly here.

Of key significance is the "Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America." The Covenant was approved by Congress in 1976 and by the people of the Northern Marianas by plebiscite. Section 301 of the Covenant, which is effective upon termination of United States trusteeship over the Marianas, provides that upon such termination, citizens of the Northern Marianas and persons who "have been domiciled continuously in the Northern Mariana Islands beginning prior to January 1, 1974," will be citizens of the United States.[1] Section 304 of the Covenant granted all the privileges and immunities of citizens of the United States to citizens of the Northern Marianas during the interim.

The Covenant also provided that the people of the Northern Marianas adopt a constitution. The United States was to approve the constitution after finding it consistent with the Covenant and with the treaties and laws of the United States applicable to the Northern Marianas. The constitution became effective pursuant to presidential proclamation in January of 1978. Proclamation No. 4534, 42 Fed.Reg. 56,593 (1977).

In section 8 of the Schedule of Transitional Matters, the constitution provided for the interim citizenship with which we are concerned. The definition of citizenship is keyed to the provisions of article III, section 301 of the Covenant. In effect, the people of the Northern Marianas and the United States government, acting in concert, provided through the Covenant and the constitution that persons continuously domiciled in the Northern Marianas who had renounced prior citizenships were entitled to interim citizenship status, bringing with it the privileges and immunities of United States citizens; those persons would become permanent United States citizens upon cessation of trusteeship status and the emergence of the commonwealth.[2] As we said earlier, "by operation of § 8(c), those residents of the Northern Marianas

---

1.  Art. III, § 301 of the Covenant provides:
      The following persons and their children under the age of 18 years on the effective date of this Section, who are not citizens or nationals of the United States under any other provision of law, and who on that date do not owe allegiance to any foreign state, are declared to be citizens of the United States, except as otherwise provided in Section 302:
      (a) all persons born in the Northern Mariana Islands who are citizens of the Trust Territory of the Pacific Islands on the day preceding the effective date of this Section, and who on that date are domiciled in the Northern Mariana Islands or in the United States or any territory or possession thereof;
      (b) all persons who are citizens of the Trust Territory of the Pacific Islands on the days (sic) preceding the effective date of this Section, who have been domiciled continuously in the Northern Mariana Islands for at least five years immediately prior to that date, and who, unless under age, registered to vote in elections for the Marianas Islands District Legislature or for any municipal election in the Northern Mariana Islands prior to January 1, 1975; and
      (c) all persons domiciled in the Northern Mariana Islands on the day preceding the effective date of this Section, who, although not citizens of the Trust Territory of the Pacific Islands, on that date have been domiciled continuously in the Northern Mariana Islands beginning prior to January 1, 1974.
    Pub.L. No. 94–241, 90 Stat. 263, 265–66 (1976), *reprinted in* 48 U.S.C. § 1681 note, at 736–37 (1982). Section 301 becomes effective, under art. X, § 1003(c) of the Covenant, upon the termination of the trusteeship agreement with the United States. *See* 90 Stat. at 277, *reprinted in* 48 U.S.C. § 1681 note, at 742 (1982).

2.  The trusteeship terminated on November 3, 1986, some nine months after the judgment of the district court which we review here. *See* Proclamation No. 5564, 51 Fed.Reg. 40,399 (1986).

who (a) did not owe allegiance to any foreign state on March 6, 1977, the date the constitution was ratified; and (b) were domiciled continuously in the Northern Mariana Islands beginning prior to January 1, 1974, until March 6, 1977, were entitled to the benefits of the interim status of United States citizenship." *Pangilinan v. Castro,* 688 F.2d at 611.

To implement the constitution and identify those persons who were qualified for interim citizenship, the legislature of the Northern Marianas adopted the "Certificate of Identity Act of 1978." Qualifications for receiving certificates of identity were, of course, drawn from the qualifications for United States citizenship under the Covenant and from the qualifications for Northern Marianas citizenship under the constitution. *See Smith v. Pangilinan,* 651 F.2d at 1322–23.

This litigation has directly concerned only the qualifications for interim citizenship under the Certificate of Identity Act. Because the qualifications for interim citizenship and permanent citizenship are by deliberate plan the same, however, we recognized in *Smith v. Pangilinan* that the issuance of a certificate of identity would have an impact upon the United States. The three legal provisions, the Certificate of Identity Act, section 8 of the Schedule of Transitional Matters of the constitution, and the Covenant "could not [have been] more closely tied together." *Smith v. Pangilinan,* 651 F.2d at 1324. We recognized that the United States' ability to have a voice in establishing the qualifications of its citizens would be impaired if it did not participate in the litigation leading to the decision to grant interim certificates of identity. We said: "[i]t seems obvious that an objective of the Act was to set up a mechanism to identify the new United States citizens before their U.S. citizenship becomes effective, thus facilitating their exercise of their rights as U.S. citizens, including their right to enter and remain in the United States." *Smith v. Pangilinan,* 651 F.2d at 1324. The United States had committed to honor such certificates as evidence of interim citizenship status by giving their holders unrestricted access to the United States and American Consular protection. *Id.* at 1323. We therefore held that the United States should be able to intervene as of right in the litigation.

We did not hold in *Smith v. Pangilinan,* however, that the United States could, as a matter of right, litigate in this proceeding or any other matters already determined by the district court. Indeed, the very premise underlying United States intervention was that if the United States did not participate in the certificate of identity proceedings, it would not be able to relitigate the same issues because of the linkage between the certificate of identity and permanent United States citizenship. *Smith v. Pangilinan,* 651 F.2d at 1324–25.

Similarly, we did not hold *Pangilinan v. Castro* that upon remand the district court should permit the United States to proceed as if the preceding two and one-half years of litigation had not occurred, nor could we have so held consistent with *Smith v. Pangilinan* or the principles of judicial economy underlying Rule 24 of the Federal Rules of Civil Procedure. Rule 24(a) requires that an application for intervention be timely. Fed.R.Civ.P. 24(a); *Nat'l Ass'n for Advancement of Colored People v. New York,* 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973) (same). If intervention is denied, an appeal from that denial does not prevent the proceedings from going forward in the district court. *See Matter of Combined Metals Reduction Co.,* 557 F.2d 179, 190 (9th Cir. 1977) ("well-established rule that appeal will not affect the validity of a judgment or order during the pendency of the appeal, absent a stay"); 3B *Moore's Federal Practice* ¶ 24.16[5], p. 24–179 (1987) (general rule that "intervention will not be allowed for the purpose of impeaching a decree already made") (quoting *United States v. California Co-operative Canneries,* 279 U.S. 553, 556, 49 S.Ct. 423, 424, 73 L.Ed. 838 (1929)).

The government is mistaken in arguing that our decision with respect to its right to intervene which, by virtue of the lack of any stay of proceedings became largely moot before it could become operative, au-

thorizes the government to reopen the case for full de novo inquiry into plaintiffs' entitlement to interim citizenship. The prior holdings of this court have established that as to the period from January 1, 1974 to March 6, 1977, plaintiffs met the domiciliary requirements for interim citizenship. *See Pangilinan v. Castro*, 688 F.2d at 612.

The qualifications for a certificate of identity, however, are not coextensive with those for permanent citizenship. The ruling that plaintiffs were entitled to certificates of identity means that they met the domicile requirements of the Certificate of Identity Act from January 1, 1974 to March 6, 1977. *Id.* The ruling does not resolve all issues that may later arise in connection with permanent citizenship. Plaintiffs themselves acknowledge, for example, that under section 301 of the Covenant, the United States may later inquire into the domicile of these plaintiffs from the 1977 date to the date of the termination of the trusteeship agreement.

After termination of trusteeship status, the United States has at least some voice in the administration of United States immigration laws in the Northern Marianas. Section 506(a) of the Covenant provides that upon termination of the Trusteeship "the Northern Mariana Islands will be deemed to be part of the United States under the Immigration and Nationality Act, as amended for the following purposes only, ... (d) With respect to persons who will become citizens or nationals of the United States under Article III of this Covenant ... the loss of nationality provisions of the said Act will apply." Pub.L. No. 94-241, 90 Stat. 263, 269 (1976), *reprinted in* 48 U.S.C. § 1681 note, at 738 (1982). Thus any persons who became citizens of the United States by operation of the Covenant are subject to loss of that citizenship if proceedings are instituted by the Attorney General under 8 U.S.C. § 1451(a).

To be successful in proceedings pursuant to section 1451(a), the government would have the burden of showing fraud or other misconduct. The government in this case has never contended that the plaintiffs were guilty of any fraud or other misconduct in connection with their applications.

The government nevertheless here wishes to examine plaintiff's qualifications for interim citizenship. In order to determine whether there might be any basis for such an examination after the district court determined that plaintiffs are entitled to such certificates, we asked for supplemental briefs. We asked what authority exists for the United States to inquire into the citizenship of persons granted interim certificates by the government of the Northern Marianas. We are not cited to any, other than section 506 of the Covenant and its incorporation of the loss of nationality provisions, which would authorize the Attorney General to reexamine such citizenship. We therefore conclude that there is no basis for the government to conduct such a reexamination.

The judgment of the district court is AFFIRMED.