UNITED STATES of America, et al., Plaintiffs-Appellees,

v.

J.B. STRINGFELLOW, Jr., et al., Defendants-Appellees,

Concerned Neighbors In Action and Penny Newman, Intervenors-Appellants.

No. 84–5682.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1985.

Decided Feb. 18, 1986.

822

F. Henry Habicht, II, Robert C. Bonner, James R. Arnold, Los Angeles, Cal., Michael R.W. Green, Dirk D. Snel, Anne S. Almy, U.S. Dept. of Justice, Washington, D.C., Lewis D'Amato, Brisbois & Bisgaard, Christopher P. Bisgaard, Los Angeles, Cal., Folger & Levin, Michael A. Kahn, Douglas Sullivan, San Francisco, Cal., Pachter, Gold & Schaffer, Clifford L. Schaffer, McCutchen, Black, Verleger & Shea, G. Richard Doty, Michael Hickok, Los Angeles, Cal., Lawrence A. Salibra, II, Cleveland, Ohio,

Latham & Watkins, David L. Mulliken, Steven P. McDonald, Robert P. Dahlquist, San Diego, Cal., Heller, Ehrman, White & McAuliffe, Richard Goff, Rene P. Tatro, McCutchen, Doyle, Brown & Enersen, Barry P. Goode, San Francisco, Cal., Chase, Rotchford, Drukker & Bogust, Vincent Fish, Los Angeles, Cal., for U.S.

Frederic D. Woocher, Joel R. Reynolds, Felicia A. Marcus, Carlyle W. Hall, Jr., John R. Phillips, Los Angeles, Cal., for intervenors-appellants.

Before GOODWIN and REINHARDT, Circuit Judges, and SOLOMON, District Judge [*].

REINHARDT, Circuit Judge:

Concerned Neighbors in Action ("CNA") and its chairwoman, Penny Newman, appeal the district court's denial of their motion to intervene as of right in an action brought by the United States and the State of California against thirty-one parties who are allegedly responsible for release of hazardous wastes from the Stringfellow Acid Pits. We conclude that the district court erred in finding that appellants failed to meet the requirements of intervention under Fed.R.Civ.P. 24(a)(2).[1]

## I. FACTUAL BACKGROUND

CNA is a nonprofit organization consisting of over 400 residents of Glen Avon, California and its surrounding communities. The organization was founded in 1979 in response to releases of hazardous wastes from Stringfellow. CNA was formed to ensure adequate clean-up of the acid pits; to monitor the performance of government agencies involved in clean-up efforts; and to protect the health and well-being of its members who, according to appellants, have all been exposed to hazardous wastes deposited at Stringfellow. Penny Newman, in addition to being the chairwoman of CNA, is a resident of Glen Avon.

Stringfellow is a 20-acre hazardous waste disposal site constructed by the State of California and located one mile from Glen Avon. According to appellants' proposed complaint in intervention, dumping of hazardous waste into the acid pits began in 1956 and continued until closure of the site in 1972. During this period, approximately 34 million gallons of hazardous wastes were dumped into the site by more than two hundred parties, including agencies of the federal government.

As early as 1969, it became apparent that the hazardous waste was not being confined to the site and was escaping into the adjacent Pyrite Creek through which surface water flows down into the community of Glen Avon. In March, 1969, heavy rains caused the site to overflow, discharging contaminated water into Glen Avon. Heavy rainfall during the winter of 1977–78 caused similar overflowing. In 1978, the State of California released 800,000 gallons of contaminated water into Pyrite Creek, which in turn drained into the streets of Glen Avon. Additional flooding resulted from heavy rains in 1979 and 1982.

In April, 1983, the United States and the State of California brought suit against thirty-one defendants, including the former owners of the site and other private parties who generated or transported wastes which were dumped at the site ("the waste-generators"). The two governmental entities sought to enjoin the release of hazardous wastes from Stringfellow pursuant to the "imminent hazard" provisions of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9657 (1982); the Federal Water Pollution Control Act Amendments of 1972 and the Clean Water

---

[*] Gus Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

[1.] On March 18, 1985, we issued an order reversing the court's denial of appellants' motion and directing the court to grant appellants leave to intervene as of right. We stated in that order that we would file an opinion at a later date.

Act of 1977, 33 U.S.C. §§ 1251–1376 (1982); the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6986 (1982); and the Safe Drinking Water Act ("SDWA"), 42 U.S.C. §§ 300f–300j–10 (1982). They also asserted claims for cost recovery pursuant to both state and federal law.[2]

In July, 1983, CNA and Newman (hereinafter collectively referred to as "CNA") moved to intervene as of right, pursuant to Fed.R.Civ.P. 24(a)(1) and 24(a)(2). In the alternative, CNA moved to intervene permissively, pursuant to Fed.R.Civ.P. 24(b). In its complaint in intervention, CNA asserted claims against the plaintiff state and federal governments as well as the thirty-one waste generators named as defendants in the existing action. In addition to joining in the plaintiffs' claims for relief, CNA sought additional injunctive relief against both the plaintiffs and the defendants, including permanent abatement of the hazard by total removal of the hazardous substances from the site, and the conducting of health studies.

The district court denied CNA's motion to intervene as of right, concluding that neither Rule 24(a)(1) nor Rule 24(a)(2) provided a basis upon which to grant intervention. With respect to Rule 24(a)(1), which provides for intervention as of right "when a statute of the United States confers an unconditional right to intervene," the district court reasoned that although the "citizen suit" provisions of the SDWA, the RCRA and the CWA provide for citizen intervention as of right in certain types of actions, these statutory rights of intervention do not apply to suits such as this which have been brought by the United States pursuant to the "emergency powers" provision of the SDWA, the "imminent hazard" provision of the RCRA, and the "emergency relief" provision of the CWA. Accordingly, the court concluded that Rule 24(a)(1) did not authorize CNA to intervene.

The district court also denied CNA's motion under Rule 24(a)(2). Rule 24(a)(2) provides for intervention as of right

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The district court concluded that CNA had failed to show that it would be practically disadvantaged by disposition of the litigation or that the existing parties would not adequately represent its interests.

Notwithstanding its denial of CNA's motion to intervene as of right, the district court granted CNA leave to intervene permissively, reasoning that since CNA's proposed complaint in intervention and the complaint filed by the United States and California raised common questions of fact and law, permissive intervention was appropriate. However, the court imposed conditions upon its grant of permissive intervention. CNA claims that those conditions severely limit its ability to influence the results of the litigation. Specifically, the district court's order prohibited appellant from (1) asserting any claims not already asserted by the original parties; (2) intervening in the original parties' cost recovery claims; and (3) initiating any motion or discovery, unless appellant had conferred with the original parties and had secured the concurrence of at least one of them in the proposed motion or discovery.

## II. ISSUES ON APPEAL

In this appeal, CNA raises two issues, only one of which we need address. First, it contends that the district court's determination that it failed to make the requisite showing under Rule 24(a)(2) was erroneous. Second, and in the alternative, it contends that the district court erred in finding that the statutes pursuant to which the original parties.

**2.** In August, 1983, several waste-generators asserted counterclaims against both governmental

plaintiffs brought this action confer upon it no right of intervention. Because we reverse the district court's denial of intervention under Rule 24(a)(2), we do not rule on appellant's statutory right of intervention claim.

## III. APPEALABILITY OF THE DISTRICT COURT'S ORDER

The waste-generators challenge our jurisdiction over this appeal. They contend that an order denying intervention as of right but granting permissive intervention is not a "final decision" within the meaning of 28 U.S.C. § 1291 (1982), and hence is not appealable. They also contend that because appellant availed itself of the benefits of permissive intervention by filing briefs and pleadings, it is, in effect, estopped from appealing the district court's denial of its motion to intervene as of right.

█ We reject the waste-generators' contentions. First, we have previously held that an order denying intervention as of right is a final appealable order, notwithstanding a simultaneous grant of permissive intervention, *California v. Block*, 690 F.2d 753, 776 (9th Cir.1982), and are bound by that holding.[3] Second, CNA's participation in the litigation as a permissive intervenor does not estop it from timely appealing that portion of the order denying intervention as of right.[4] A party is not required to reject the benefits of a judgment it deems inadequate in order to preserve its right to appeal, so long as the party does not consent to the judgment. *United States v. Hougham*, 364 U.S. 310, 312, 81 S.Ct. 13, 16, 5 L.Ed.2d 8 (1960); *United States for Use & Benefit of H & S*

*Industries, Inc. v. F.D. Rich Co.*, 525 F.2d 760, 764–65 (7th Cir.1975); *Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co.*, 414 F.2d 750, 752 (9th Cir.1969); 9 J. Moore & B. Ward, *Moore's Federal Practice* ¶ 203.06, at 3–26 (2d ed. 1985). Here, although it may have unwillingly participated in the litigation as a permissive intervenor, CNA made it clear that it was not consenting to the denial of its right to intervene under Rule 24(a)(2). Moreover, to hold otherwise would force CNA to give up one important right in order to preserve another.

## IV. THE DISTRICT COURT'S DENIAL OF APPELLANTS' MOTION TO INTERVENE AS OF RIGHT UNDER RULE 24(a)(2)

### A. *Standard of Review*

█ Although the waste-generators contend that the district court's denial of appellant's motion to intervene as of right should be reviewed for an abuse of discretion, we traditionally conduct a *de novo* review of such orders. *See, e.g., Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir.1983); *Washington State Building & Construction Trades Council v. Spellman*, 684 F.2d 627, 629–30 (9th Cir.1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *Smith v. Pangilinan*, 651 F.2d 1320 (9th Cir.1981); *Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir.1980); *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir.1980); *Legal Aid Society v. Dunlop*, 618 F.2d 48, 49–50 (9th Cir.1980); *Johnson v. San Francisco Unified School District*, 500 F.2d 349, 352–54 (9th Cir.1974). We do so because our re-

---

**3.** The governments and several of the waste-generators originally moved, before a motions panel of this court, to dismiss CNA's appeal for lack of jurisdiction. Neither party brought *California v. Block, supra,* to that panel's attention, due to the fact that the case is not annotated under Rule 24. The panel decided the jurisdictional issue against CNA, dismissed the appeal and issued an opinion for publication. CNA then moved for rehearing on the ground that the order of dismissal was in conflict with *Block*. The panel agreed. It withdrew its opinion, held that we had jurisdiction over CNA's appeal and

ordered, in an unpublished memorandum, that the appeal be calendared for a hearing on the merits.

**4.** We note that CNA, unlike the applicant in *Block*, has demonstrated that its limited status as a permissive intervenor impedes its ability to fully prosecute its claims. In *Block*, we stated that the applicant had failed to show with any specificity that it was prejudiced by the court's actions in granting it permissive intervention status.

view of the district court's decision involves application of a rule of law to the established facts, and because the issue primarily involves consideration of legal concepts in the mix of fact and law. *See United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). *See also* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1902 (1972).

### B. *The Validity of the District Court's Decision*

 Rule 24 is broadly construed in favor of applicants for intervention. *Washington State Building & Construction Trades Council v. Spellman,* 684 F.2d 627, 630 (9th Cir.1982); 7A C. Wright & A. Miller, *supra,* § 1904. We have adopted a four-part test to determine whether applications for intervention as of right pursuant to Rule 24(a)(2) should be granted. An order granting intervention as of right is appropriate if (1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties. *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d at 527; *County of Fresno v. Andrus,* 622 F.2d at 438. In applying this test we are guided primarily by practical considerations. *See* Fed.R.Civ.P. 24(a)(2) advisory committee note ("if an [applicant] would be substantially affected in a practical sense by the determination made in an action, [the applicant] should, as a general rule, be entitled to intervene...."). The parties dispute neither the timeliness of CNA's application nor its interest in the property at issue.

Accordingly, we will address only the remaining two parts of the test.

### 1. *Extent to which denial of appellant's motion to intervene as of right impairs its ability to protect its interest*

In support of its showing that disposition of this action may have a practical adverse impact on its interests, CNA points to the effect that any decision in this case would have on subsequent claims it might bring against the original parties. CNA correctly points out that "[u]nder the doctrine of stare decisis, appellate rulings of law become controlling precedent and, consequently, affect the rights of future litigants." *McConney,* 728 F.2d at 1201. In light of this potential stare decisis effect, CNA contends that its absence from this litigation could, as a practical matter, result in its being precluded from litigating several of its claims against the governmental parties.[5] We agree.

 The prospect of stare decisis may, under certain circumstances, supply the requisite practical impairment warranting intervention as of right. *Smith v. Pangilinan,* 651 F.2d 1320, 1325 (9th Cir.1981); *see also Atlantis Development Corp. v. United States,* 379 F.2d 818, 826–29 (5th Cir. 1967); 7A C. Wright & A. Miller, *supra,* § 1908 at 515–17. Here, because of the issues of fact and law that are common to (1) CNA's complaint in intervention, (2) the governments' original complaint and (3) the waste-generators' counterclaims, resolution of the liability questions would, as a practical matter, bear significantly on the resolution of CNA's claims against any of the original parties in a subsequent related action. *Cf. Atlantis Development Corp. v. United States,* 379 F.2d at 826–29.

---

5. The issues, the determination of which might affect any suit appellant might subsequently bring against appellees, include (1) the causal relationships between the parties and the current conditions at the dumpsite; (2) the liability of each party under the various environmental statutes and common law causes of action, including the liability of the responsible government agencies; (3) the availability of certain alleged statutory and equitable defenses to liability; (4) the liability of certain individuals on an alter ego theory for the actions of corporate entities under their control; and (5) the remedies available under the relevant statutory schemes.

Our analysis is also influenced by the divergent remedial schemes sought by the original parties and CNA. In addition to abatement of the hazardous waste releases from the Stringfellow site and reimbursement for funds expended in response to the imminent hazard sought by the original plaintiffs, CNA seeks to obtain additional injunctive relief against the 31 named waste generators and the original plaintiffs, including permanent abatement of the hazard by removal of all hazardous substances from the site. In addition, CNA seeks the inclusion of health studies in any remedial program devised as a result of this litigation.

The disposition of the present litigation will, as a practical matter, establish the applicable remedial scheme. CNA has a palpable interest in that scheme. Where, as here, a prospective intervenor has demonstrated a clear interest in the remedial scheme, and where the prospective intervenor seeks to obtain remedies that differ from those sought by the original plaintiffs, it is reasonable to conclude that disposition of the litigation may impair the prospective intervenor's ability to protect its interests. That the remedy established in the present litigation may be challenged in a subsequent action does not detract from our conclusion. *See Johnson v. San Francisco Unified School District*, 500 F.2d at 353 (where, in desegregation action brought by parents of black children, remedy sought by plaintiffs would affect interests of Chinese children, threat of impairment held sufficient to warrant intervention despite ability of intervenors to challenge adopted remedy in subsequent lawsuit); *Natural Resources Defense Council, Inc. v. Costle*, 561 F.2d 904, 910 (D.C. Cir.1977) ("it is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation").

Because of the possible *stare decisis* effect of this litigation, and because of CNA's palpable interest in the remedial scheme, we hold that CNA has adequately demonstrated that disposition of the litiga-

tion may, as a practical matter, impair its ability to protect its interests.

### 2. *Adequacy of Representation by Existing Parties*

Finally, we must determine whether CNA's interest in this litigation can be represented adequately by the original plaintiffs. In finding that the original plaintiffs adequately represented CNA's interests, the district court applied the standard of *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 987 (2d Cir. 1984), under which an applicant must make a "strong showing" of inadequate representation when the purported representative is a state or the federal government. However, this standard clearly conflicts with the law of this circuit. Consistent with *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538–39, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972), where the government was the purported representative, we have held that "the requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests 'may be' inadequate and ... the burden of making that showing is minimal." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d at 528; *see also Legal Aid Society v. Dunlop*, 618 F.2d 48, 50 (9th Cir.1980); *Johnson*, 500 F.2d at 353–54.

In evaluating whether there exists an original party that will adequately represent CNA's interests, we consider three factors: whether the interests of a present party to the suit are such that it will undoubtedly make all of the intervenor's arguments; whether the present party is able and willing to make such arguments; and whether the intervenor would offer any necessary element to the proceedings that the other parties would neglect. *County of Fresno v. Andrus*, 622 F.2d 436, 438–39 (9th Cir.1980); *Blake v. Pallan*, 554 F.2d 947, 954–55 (9th Cir.1977).

Because the thirty-one generators have brought counterclaims on the issue of liability against the original plaintiffs, the district court reasoned that each of the relevant factors weighs in favor of ade-

quate representation. The district court concluded that *either* the original plaintiffs *or* the original defendants possessed interests such that CNA's arguments would undoubtedly be made; that *either* the original plaintiffs *or* the original defendants would be able and willing to make these arguments; and that because of the relative positions of the original parties, intervention by CNA would not contribute any necessary element to the proceedings that would otherwise be neglected. The district court's analysis is defective.

■ When a party possesses interests adverse to those of a prospective intervenor, that party cannot adequately represent the intervenor's interests. *See Sanguine, Ltd. v. United States Department of Interior,* 736 F.2d 1416, 1419 (10th Cir. 1984) (an applicant may meet burden of showing inadequate representation by showing that the representative has an interest adverse to the applicant); *Stadin v. Union Electric Co.,* 309 F.2d 912, 919 (8th Cir.1962) (same); 7A Wright & Miller, *supra,* § 1909 at 524–25 (absentee cannot be required to look for adequate representation from an opponent; if all existing parties are adverse, then absentee is not adequately represented); *cf. United States v. Board of School Commissioners, Indianapolis, Indiana,* 466 F.2d 573, 575 (7th Cir.1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973) (representation is adequate if, *inter alia,* representative does not have or represent an interest adverse to the proposed intervenor); *Sagebrush Rebellion, Inc. v. Watt, supra,* 713 F.2d at 528 (that defendant representative had previously been head of plaintiff organization raised question concerning adequacy of representation sufficient to support intervention). Although the original plaintiffs and defendants certainly have an interest in attempting to place the blame on each other, it does not necessarily follow

that CNA's claims will be prosecuted as vigorously as they would be if CNA were granted leave to intervene as of right. First, by engaging in independent discovery CNA might uncover facts that would affect the remedy in a manner favorable to it or would materially influence the settlement. Secondly, each party may be reluctant to advance an argument that would support a finding of liability against its opponent, but might, at the same time, expose that party to an increased risk of liability. Finally, where, as here, a third party seeks to press claims against both the plaintiffs and the defendants in ongoing litigation, there exists a genuine possibility that, in the absence of intervention, the existing parties will "bargain away" the third party's interests rather than vigorously represent those interests at the possible expense of their own liability. Indeed, should settlement become a viable alternative in this litigation, it is highly unlikely that this "division of representation" would result in a settlement that would adequately address CNA's interests.

Moreover, CNA seeks to proceed on the theory that plaintiffs and defendants are jointly and severally liable. As a practical matter, neither plaintiffs nor defendants, who respectively seek to impose liability exclusively on the opposing party, will represent this particular interest.

Finally, CNA seeks remedies that neither existing party has contemplated. Thus, even were we to credit the district court's novel "division of representation" theory, it would not dispose of the issue of representation with respect to devising an appropriate remedy.

■ We conclude that CNA has carried its "minimal burden" with respect to a showing that its interest might be inadequately represented.[6] Because of our find-

6. Moreover, CNA would in all likelihood meet the "strong showing" standard of *United States v. Hooker Chemicals & Plastics Corp., supra,* if that standard were applicable. Because CNA seeks to bring claims against the United States and the State of California, its interests are adverse to those of the plaintiff governments. Whether or not the state and federal plaintiffs are characterized as suing in *parens patriae,* the fact remains that they oppose certain claims that CNA seeks to assert. This case is thus clearly distinguishable from *Hooker,* in which

ing that CNA is entitled to intervene under Rule 24(a)(2), we do not rule on the question of its statutory right to intervene under Rule 24(a)(1). We note, however, the persuasiveness of its argument that it is afforded such a right under the citizen suit provision of the Resource Conservation and Recovery Act, 42 U.S.C.A. § 6972 (West Supp.1985).[7]

We reverse that portion of the district court's order denying intervention as of right; vacate that portion of the order granting CNA the right to intervene permissively; and remand the matter with instructions to grant CNA leave to intervene as of right.

REVERSED AND REMANDED.

the applicants' interests were not adverse to those of the plaintiff government. We note as well that if CNA's argument for citizen intervention in government-initiated imminent hazard actions under RCRA is correct, *see infra* at 828–829 RCRA itself negates *Hooker*'s presumption that governmental representation in such actions is adequate.

7. In support of its claim of a statutory right to intervene, CNA argues that Congress intended the 1984 amendments to RCRA, which were enacted subsequent to the initiation of appellant's suit, to clarify citizens' rights under existing law to intervene in government-initiated imminent hazard actions. *See* 130 *Cong.Rec.* S9152 (daily ed. July 25, 1984) (statement of Sen. Mitchell); S.Rep. No. 98–284, 98th Cong., 1st Sess. 56 (1983). The Senate version of the amendments explicitly provided for such intervention. 130 *Cong.Rec.* S9208–09 (daily ed. July 25, 1984). The Conference Committee imposed limitations upon citizens' right to commence imminent hazard actions in addition to those of the Senate version, and restructured section 6972 in accordance with those additional limitations. The revised structure altered the reference of the intervention subsection, 42 U.S.C.

§ 6972(b)(2)(E), so that that subsection now authorizes intervention in *citizen-initiated* imminent hazard actions, while omitting reference to *government-initiated* imminent hazard actions. CNA argues that the apparent elimination of the right to intervene in government suits was inadvertent, since such elimination would be contrary to the stated legislative purpose of the 1984 amendments. CNA further contends that we should interpret the 1984 amended citizen suit provision consistently with evident Congressional intent, rather than according to its literal terms, *see Barnes v. Donovan,* 720 F.2d 1111, 1113–14 (9th Cir.1983); *Heppner v. Alyeska Pipeline Service Co.,* 665 F.2d 868, 872 (9th Cir. 1981); *United States v. Babcock,* 530 F.2d 1051, 1053 (D.C.Cir.1976), and that that intent clarifies the law existing at the time this suit was commenced, *see May Department Stores Co. v. Smith,* 572 F.2d 1275, 1278 (8th Cir.) (*per curiam*), *cert. denied,* 439 U.S. 837, 99 S.Ct. 122, 58 L.Ed.2d 134 (1978); *In re Adams,* 761 F.2d 1422, 1427 (9th Cir.1985). Although CNA's position appears to have considerable merit, we do not now decide its validity.