839 F.2d 635
 10 Fed.R.Serv.3d 858
 UNITED STATES of America, Plaintiff-Appellee,
v.
STATE OF OREGON, et al., Defendants-Appellees,
v.
RESIDENTS OF FAIRVIEW TRAINING CENTER; Ronald Brelsford;
Plaintiffs-Intervenors,
and
Sonya Fryer; Jorgina Oliver; Ronald Lee; Thelma Jackson;
individually and on behalf of all others similarly
situated, Plaintiffs-Intervenors-Appellants.
 No. 87-3671.
 United States Court of Appeals,
Ninth Circuit.
 Argued Dec. 11, 1987.
Submitted Dec. 18, 1987.
Decided Feb. 19, 1988.
 
 William Bradford Reynolds, Asst. Atty. Gen., David K. Flynn, Louise A. Lerner (argued), Dept. of Justice, Washington, D.C., for plaintiff-appellee.
 Linda DeVries Grimms, Oregon State Atty. General's Office, Salem, Or., for defendants-appellees.
 David B. Hatton, Oregon Advocacy Center, Portland, Or., for plaintiffs-intervenors-appellants.
 Appeal from the United States District Court for the District of Oregon.
 Before WRIGHT, ANDERSON and SCHROEDER, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 The appellants are residents of the Fairview Training Center. The State of Oregon operates the facility. The conditions at that institution are presently the subject of a law suit filed by the United States government against the State of Oregon claiming failure to provide minimally adequate training, medical care, sanitation and trained staff. The lawsuit is authorized by the provisions of the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. Sec. 1997 et seq. The appellants seek to intervene in that litigation and appeal from the district court's order denying them the right or permission to intervene. We reverse the district court because we hold that the appellants have satisfied the requirements of Rule 24(a) Fed.R.Civ.P. for intervention as of right.
 
 
 2
 The United States filed its action on July 28, 1986 pursuant to section 1997a(a) of CRIPA which provides that the Attorney General may sue to secure "equitable relief ... to insure the minimum corrective measures necessary to insure the full enjoyment of [federal constitutional and statutory] rights" by institutionalized persons. 42 U.S.C. Sec. 1997a(a). The statute was enacted in 1980 following decisions of this and other courts that the United States needed express statutory authority before it could seek relief vindicating constitutional rights of the mentally retarded. See, e.g., United States v. Mattson, 600 F.2d 1295 (9th Cir.1979). The Conference Report stated that
 
 
 3
 [i]t should be emphasized that ... the Attorney General's authority extends to initiating suit "for or in the name of the United States," in order to represent the national interest in securing constitutionally adequate care for institutionalized citizens. As a representative of the United States, the Attorney General does not directly represent any institutionalized plaintiffs, and the authority granted him is in no way intended to preclude, delay or prejudice private litigants from enforcing any cause of action they may have under ... law.
 
 
 4
 H.Conf.Rep. No. 96-897, 96th Cong., 2d Sess. 13, reprinted in 1980 U.S.Code Cong. & Admin.News 787, 837. Both the language and the history of the statute show that Congress did not intend by its enactment to restrict in any way the authority of the district courts to adjudicate claims brought by or on behalf of the institutionalized persons themselves. The statute itself provides that:
 
 
 5
 The provisions of this [Act] shall in no way expand or restrict the authority of parties other than the United States to enforce the legal rights which they may have pursuant to existing law with regard to institutionalized persons.
 
 
 6
 42 U.S.C. Sec. 1997j ("section 12").
 
 
 7
 Whether or not the appellants can intervene in this action thus depends solely upon whether or not they meet the requirements for intervention under Rule 24, Federal Rules of Civil Procedure. Though they sought to intervene both as a matter of right or, in the alternative, with the court's permission, we need deal only with their contention that they are entitled to intervene as a matter of right. The rule in that regard provides:
 
 
 8
 Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 9
 Fed.R.Civ.P. 24(a).
 
 
 10
 We review the district court decision on intervention as of right de novo. In re Benny, 791 F.2d 712, 721 (9th Cir.1986). We construe the rule broadly in favor of applicants for intervention. United States v. Stringfellow, 783 F.2d 821, 826 (9th Cir.1986), opinion vacated and remanded on other grounds sub nom., Stringfellow v. Concerned Neighbors in Action, --- U.S. ----, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987); Washington State Building & Construction Trades Council v. Spellman, 684 F.2d 627, 630 (9th Cir.1982), cert. denied, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). We have established a practical test which applicants must meet in order to qualify for intervention:
 
 
 11
 (1) the applicant's motion must be timely; (2) the applicant must assert an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that without intervention the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the other parties.
 
 
 12
 Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 527 (9th Cir.1983) (quoting Smith v. Pangilinan, 651 F.2d 1320, 1323-24 (9th Cir.1981)). The parties agree that the application is timely. There is also no question that the applicants have an interest relating to the facility which is the subject of the action; they live in it. The dispute is with the third and fourth requirements for intervention as of right. We must decide whether the disposition of this lawsuit may affect the ability of these applicants to protect their interests, and whether their interests are being adequately represented by the United States.
 
 
 13
 We turn first to the issue of adequate representation. To evaluate the contentions of the parties it is necessary to understand their respective interests. In their complaint for intervention, the applicants set forth claims for injunctive and other relief affording residents of the facility access to better conditions in the facility, sufficient training in self-care skills and sufficient community-based programs to insure freedom from unnecessary institutionalization.
 
 
 14
 The government has limited its complaint to seeking injunctive relief for the more outrageous conditions existing within the facility. Common to both complaints, however, is the goal of vindicating the constitutional rights of Fairview's residents. The dispute here reflects the parties' differing views concerning the nature and scope of remedial relief.
 
 
 15
 We have held that in determining whether rights are being adequately represented, it is appropriate to examine whether existing parties' interests are such that they will make all of the arguments the applicants would make. Blake v. Pallan, 554 F.2d 947, 954-55 (9th Cir.1977). We have denied intervention as of right where it was clear that the existing parties were making all the arguments that applicants for intervention sought to make. State of Calif. v. Tahoe Regional Planning Agency, 792 F.2d 775, 779 (9th Cir.1986). Here, however, it is apparent that the government's arguments will not include the constitutional deficiencies raised by the applicants.
 
 
 16
 The government argues that in determining the adequacy of its representation of the applicants' interests, we should consider only the issues which the government raises in its complaint. It says in effect that we should ignore the additional issues which the applicants wish to raise to protect the applicants' own interests. That argument stands the relevant provisions of Rule 24 on its head by defining adequacy in terms of what existing parties are going to argue rather than in terms of the interests of the applicants in the subject matter of the litigation. See 7C C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 1909, at 346. This view is directly contrary to our law:
 
 
 17
 In determining the adequacy of representation, we consider whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect.
 
 
 18
 Tahoe Regional Planning Council, 792 F.2d at 778. See Stringfellow, 783 F.2d at 828; Sagebrush, 713 F.2d at 528. We must hold that the United States is not adequately representing the interests applicants wish to protect.
 
 
 19
 The district court denied intervention because it was of the view that the intervenors should file a separate lawsuit to air the issues and arguments they wish to inject into this litigation. The district court's ruling was thus based not so much on adequacy of representation as it was on its view that this litigation will not impair the ability of the intervenors to proceed in a different suit. We agree with the district court that the pivotal issue is whether the disposition of this action, as a practical matter, may impair or impede the intervenors' ability to protect their interests. However, this court concludes that it may.
 
 
 20
 This litigation, which directly involves the conditions at the applicants' institution, must of necessity result in factual and legal determinations concerning the nature of those conditions. Such determinations when upheld by an appellate ruling will have a persuasive stare decisis effect in any parallel or subsequent litigation. We have said that such a stare decisis effect is an important consideration in determining the extent to which an applicant's interest may be impaired. Stringfellow, 783 F.2d at 826; Smith, 651 F.2d at 1325.
 
 
 21
 More important, this record shows as a practical matter that this litigation may impair appellants' ability to obtain effective remedies in later litigation if the trial court is not allowed to consider the appellants' contentions here. The record reflects that Medicaid decertification of the Fairview facility because of its inadequate services led to a state plan to improve services at Fairview, relocate current residents to community services and expand and improve those community services. Under the plan, the State of Oregon has a limited amount of money to spend on improving the care and treatment of mentally retarded persons. Applicants are concerned with all elements of that plan. The United States in this litigation is concerned only with flagrant conditions at Fairview.
 
 
 22
 Clearly the district court's consideration of the United States' claims in isolation from the concerns of the applicants could have a powerful and immediate effect upon the practical ability of the applicants to affect in later litigation the distribution of resources available for mental health in the State of Oregon. The position of this action thus "may as a practical matter impair or impede" their ability to protect their interests. Fed.R.Civ.P. 24(a). This conclusion is fully in accord with our past decisions recognizing practical limitations on the ability of intervention applicants to protect interests in the subject of litigation after court-ordered equitable remedies are in place. See Stringfellow, 783 F.2d at 827 (intervention allowed because litigation would result in a remedial scheme that could affect intervenor's interests); Johnson v. San Francisco Unified School District, 500 F.2d 349, 353 (9th Cir.1974) (intervention allowed because remedial plan in desegregation case brought by black parents could impair Chinese parents' rights). The requirements of Rule 24(a) have been satisfied.
 
 
 23
 The State of Oregon also raises an eleventh amendment objection to the form of the petition for intervention because it names the State as a defendant. It is clear from the proposed complaint in intervention, both in its caption and body, that the applicants seek injunctive relief against individual defendants in the manner appropriate under Ex Parte Young and a host of its progeny. See, e.g., Jackson v. Hayakawa, 682 F.2d 1344, 1350-51 (9th Cir.1982).
 
 
 24
 REVERSED AND REMANDED with instructions to the district court to enter an order granting the application for intervention.