PORTLAND AUDUBON SOCIETY; Headwaters; Lane County Audubon Society; Oregon Natural Resources Council; the Wilderness Society; Sierra Club; Siskiyou Audobon Society; Central Oregon Audubon Society; Salem Audubon Society; Kalmiopsis Audubon Society; Umpqua Valley Audubon Society; Natural Resources Defense Council, Inc., Plaintiffs-Appellees,

v.

Donald HODEL, in his official capacity as Secretary, United States Department of Interior, Defendant,

and

Northwest Forest Resources Council, Defendant-Intervenor-Appellant,

and

Huffman and Wright Logging Company; Freres Lumber Company, Inc.; Lone Rock Timber Company, Inc.; Scott Timber Company; Clear Lumber Manufacturing Corp.; Yoncalla Timber Products, Inc.; and Cornett Lumber Company, Inc., Defendants-Intervenors-Appellants.

PORTLAND AUDUBON SOCIETY; Headwaters; Lane County Audubon Society; Oregon Natural Resources Council; the Wilderness Society; Sierra Club; Siskiyou Audubon Society; Central Oregon Audubon Society; Salem Audubon Society; Kalmiopsis Audubon Society; Umpqua Valley Audubon Society; Natural Resources Defenses Council, Inc., Plaintiffs-Appellants,

v.

Donald HODEL, in his official capacity as Secretary, United States Department of Interior, Defendant-Appellee,

and

Northwest Forest Resources Council; Association of O & C Counties; Benton County, Defendants-Intervenors-Appellees.

Nos. 88-3854, 88-3855 and 88-3787.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 19, 1988.

Decided Jan. 24, 1989.

Before GOODWIN, Chief Judge, SCHROEDER and PREGERSON, Circuit Judges.

GOODWIN, Chief Judge:

Plaintiff environmental groups appeal the dismissal under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) of their action against defendant Donald Hodel, Secretary of Interior, and others. Certain intervenors also challenge the district court's denial of their motion to intervene on one of the plaintiffs' claims. We reverse in part and remand for trial.

The plaintiffs oppose the logging of old-growth fir timber. The Oregon director of the Bureau of Land Management (BLM) is in the process of selling for harvesting a large number of tracts of old-growth timber located in seven management districts. Plaintiffs sued to prevent logging these timber sales. Their main argument is that logging will destroy the habitat of the northern spotted owl, thereby threatening the species with extinction. For the purposes of Rule 12 review, we are required to assume the truth of the alleged facts.

The complaint sought declaratory and injunctive relief based upon the logging plan's alleged violation of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4347 (1982), the Oregon and California Lands Act, 43 U.S.C. § 1181 (1982), the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701–1782 (1982), and the Migratory Bird Treaty Act, 16 U.S.C. §§ 703–12 (1982).

Plaintiffs do not seek relief under the Endangered Species Act because the United States Fish and Wildlife Service has refused to declare the Northern Spotted Owl an endangered species. This refusal has been challenged in other litigations by some of the same plaintiffs. *See Northern Spotted Owl (Strix Occidentalis Caurina)*

Victor M. Sher, Sierra Club Legal Defense Fund, Inc., Seattle, Wash., Michael Axline, Western Natural Resources Law Clinic, Eugene, Or., for plaintiffs-appellants-cross-appellees.

Martin W. Matzen, Dept. of Justice, Wash., D.C., and Thomas C. Lee, Asst. U.S. Atty., Portland, Or., for defendant-appellee.

Mark C. Rutzick, Preston, Thorgrimson, Ellis & Holman, Portland, Or., for defendants-intervenors-appellees-cross-appellants.

Phillip D. Chadsey, Stoel, Rives, Boley, Jones & Grey, Portland, Or., for defendants-intervenors-appellees.

*v. Donald Hodel,* (W.D. Wash. No. C88–573Z, November 17, 1988) [1988 WL 149253].

Plaintiffs seek an injunction to halt all timber sales that included old-growth Douglas fir trees more than 200 years old and growing within 2.1 miles of known spotted owl habitat sites. Maps of proposed timber sales reveal that some 289 of the old-growth fir timber stands offered for sale fall within the requested injunction.

The Northwest Forest Resources Council (NFRC), eight Oregon counties, and various individual contractors (the Huffman & Wright Group) were allowed to intervene as defendants with respect to certain of the plaintiffs' claims.

While this appeal has been pending, we granted in part the plaintiffs' emergency motion for a temporary injunction. During the summer of 1988, selected logging operations were allowed to continue, but the logging of several other sales was enjoined. The question that remains to be decided is whether plaintiffs can continue this litigation.

### Statutory Withdrawal of Jurisdiction

█ The district court held that section 314 of the 1988 continuing budget resolution withdrew the court's jurisdiction to consider the plaintiffs' claim.

Section 314 provides:

The Forest Service and Bureau of Land Management are to continue to complete as expeditiously as possible development of their respective Forest Land and Resource Management Plans to meet all applicable statutory requirements. Notwithstanding the date in section 6(c) of the NFMA (16 U.S.C. 1600), the Forest Service, and the Bureau of Land Management under separate authority, may continue the management of lands within their jurisdiction under existing land and resource management plans pending the completion of new plans. Nothing shall limit judicial review of particular activities on these lands: *Provided, however,* That there shall be no challenges to any existing plan on the sole basis that the plan in its entirety is outdated, or in the case of the Bureau of Land Management, solely on the basis that the plan does not incorporate information available subsequent to the completion of the existing plan: *Provided further,* That any and all particular activities to be carried out under existing plans may nevertheless be challenged.

Continuing Resolution, H.J.Res. 395, § 314, Pub.L. No. 100–202, 101 Stat. 1329–254, 133 Cong.Rec. H 12468 (daily ed. Dec. 21, 1987) (emphasis added). (The above section was reenacted without change as H.R. 4867 and signed by the President on September 27, 1988, and is now found in Pub.L. No. 100–446).

The plaintiffs argue that the quoted section of the continuing resolution does not withdraw jurisdiction to hear this case. The section purports in one sentence to take away the jurisdiction of the district courts to hear challenges to "existing plans", while in a following sentence providing "further that any and all particular activities to be carried out under existing plans may nevertheless be challenged." The trial court interpreted this extraordinary language as a clear withdrawal of jurisdiction. We find it anything but clear.

Plaintiffs argue in effect that each sale which includes spotted owl habitat is a "particular activity" subject to challenge. Defendants argue, on the other hand, that each of the seven regional "existing plans" is a comprehensive and carefully coordinated management plan of scheduled sales preceded in each of the seven districts by environmental impact statements, and, by express legislative intent, made immune from challenge.

The management plans are designed to provide a steady flow of old growth timber from the federal inventory to the sawmills and other manufacturers in the Oregon counties containing BLM old growth timber. Defendants argue that the challenge of virtually all of the planned sales under the guise of challenging "particular activities" is a transparent effort to avoid the clear intent of section 314 by nibbling away at the management plans, sale by sale.

The sales are indeed separate transactions. They are also part of an existing plan of disposal of federal timber in the region. Thereby hangs the problem in this case.

"We begin with the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670, 106 S.Ct. 2133, 2135, 90 L.Ed.2d 623 (1986); *see Love v. Thomas,* 858 F.2d 1347 (9th Cir.1988) (observing that "we construe prohibitions against judicial review narrowly"). *See Moapa Band of Paiute Indians v. United States Dep't of Interior,* 747 F.2d 563, 565 (9th Cir.1984) (observing that "[p]reclusion of judicial review ... usually will not be found absent a clear command of the statute").

The language in section 314 upon which the district court relied is "that there shall be no challenges to any existing plan ... solely on the basis that the plan does not incorporate information available subsequent to the completion of the existing plan...." Here the key words seem to be "solely" and "information available subsequent to the completion of the existing plan."

The plan to sell substantially all the marketable old growth fir timber remaining under BLM management was an "existing plan" when this litigation was commenced. The environmental implications of the plan had been fully studied between 1979 and 1983. The studies had evaluated the impact upon wildlife, including owls. It was and is no secret that the northern spotted owl disappears when its habitat is destroyed by logging. The plan was nonetheless approved and was being executed. This litigation threatened to delay the proposed sales, at considerable expense to the impacted counties, industrial purchasers, and the communities that rely upon the timber industry for their livelihood.

The defendants went to their senators and representatives, and section 314 was the result. The environmental impact studies made in 1983 during the preparation of the plan had not been challenged in court. They had been challenged in administrative proceedings. After the sales were advertised in 1987, the plaintiffs discovered more information about the northern spotted owl. Bird experts generally agreed that the continued logging of old growth fir would probably exterminate the species in the logged off areas. The owl habitat problem had been treated in the impact statements, but had not been deemed by the BLM to be a sufficient reason to abort the plan. New information generated both inside and outside the federal government reinforced the plaintiffs' opposition to the timber sales, but did not cause the BLM to change its position.

There is little doubt about the intent of the sponsors of section 314. The sponsors intended to stop this particular lawsuit and to permit the sales to go forward without further delay. It is equally clear that the plaintiffs intended to stop the logging, by any legal means available. Actual "legislative" intent of congressional sponsors is not seriously debated in this case.

The legal problem that the court faces is to determine whether, following principled methods of statutory construction, Congress expressed the intent of the section's sponsors in such a way as to withdraw the jurisdiction of the district court to try this lawsuit.

The district court characterized this action as an action brought "on the sole basis of new information concerning the northern spotted owl." The plaintiffs argue that the district court erred in characterizing a "sole basis" because the court did not take

account of a number of other theories relied upon by the plaintiffs.

Plaintiffs allege that new information shows a violation of the Migratory Bird Treaty Act. The district court did not refer to this statute in holding that plaintiffs' claim is based upon "information available subsequent" to the completion of the existing plan. That holding solves only part of the problem.

For example, plaintiffs contend that the logging will constitute a taking of habitat and thus a taking of protected birds under the Act. Plaintiffs say that this migratory bird claim does not depend upon "new information." We express no opinion on the merits of this argument. The district court has not yet considered it. But a claim somewhat similarly framed was recently recognized as at least reviewable in *Palila v. Hawaii Dept. of Land*, 852 F.2d 1106 (9th Cir.1988) (finch-billed Palila habitat harmed by grazing sheep).

The plaintiffs also challenge the Secretary's interpretation of the Oregon and California Lands Act (OCLA). Because they challenge decisions about owl habitat made before the plans at issue were adopted, that part of the claim does not appear to be based on new information, and therefore, whatever its merits, is not subject to Rule 12(b) dismissal on its face as being based on new information.

Contrary to the district court's conclusion, the plaintiffs' complaint does not allege "that the plan in its entirety is outdated" or "solely ... that the plan does not incorporate information available subsequent to the completion of the existing plan." Section 314. Instead, the plaintiffs seek, on a variety of grounds, to enjoin specific timber sales that have been authorized pursuant to the plans. It is true that the complaint relies on information published after the "existing plan" was completed. However, fairly construed, the complaint does not rely solely upon new information.

The plaintiffs contend that the controlling language of section 314 is that "[n]othing shall limit judicial review of particular activities on these lands" and that "any and all particular activities to be carried out

under existing plans may ... be challenged." *Id.* The district court has not yet passed upon the question whether timber sales are "particular activities".

The defendants argue that because the plaintiffs seek to enjoin every planned sale that includes old-growth timber within a 2.1–mile radius of an owl habitat, the attack is essentially an attack on the whole plan. It does have that effect. The plaintiffs argue, however, that the challenge of a number of particular sales is a challenge of "particular activities," the right to which is guaranteed by the express terms of the statute. With this set of competing views of the language of the statute as applied to the more or less undisputed facts, the district court opted to end the case by the first door out—resort to the "sole basis" clause. It is not that easy.

*Legislative History*

The defendants point to fragments of the legislative history of section 314 that indicate that Congress intended to preclude judicial review in this very case. *See Block v. Community Nutrition Institute*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453–54, 81 L.Ed.2d 270 (1984) (stating that "[w]hether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved"). Parts of the legislative history, such as comments by individual sponsors and committee reports, support the defendants' claim.

There is no doubt that the BLM has been instructed to sell, and that the logging industry desires to buy, as much old growth fir timber as can be reached by existing technology. The record contains abundant evidence of local Congressional support for the marketing plan. However, expressions of individual legislators' intent do not necessarily prove congressional intent. See *TVA v. Hill*, 437 U.S. 153, 189–91, 98 S.Ct. 2279, 2299–2300, 57 L.Ed.2d 117 (1978). Substantial doubt about the congressional intent exists.

The district court opinion quoted from and relied on the Senate committee report. We have examined that report, and also the conference report.

The conference committee report explains changes to the Senate report and says the statute means that "existing plans may not be challenged solely on the basis that the plans are outdated or that there is new information, *unless the claim includes information as to substantive concerns related to the new information. Any particular activities, such as individual timber sales, may continue to be challenged as always.*" Conference Report No. 498, 100th Cong., 1st Sess. at 925 (emphasis added). This language tends to support the plaintiffs.

The plaintiffs assert that their newly discovered information about the loss of habitat and the resulting loss of bird population is a substantive concern. The district court has only indirectly passed upon this question., The plaintiffs also argue that they are not challenging the marketing plan solely on the basis of the alleged obsolescence of the 1983 environmental studies nor solely on the acquisition of new information, but on the additional ground that the plan violates a number of other specific statutory provisions. When looking at the complaint as a whole it is difficult to avoid the conclusion that it challenges particular sales (activities) on grounds that remain available under the express terms of the very statute upon which the defendants rely. Accordingly, we must hold that the Section 314 savings clauses require the district court to decide how to apply the law to particular sales.

*Express or Implied Repeal*

Section 314 precludes resort to the judicial review provisions of the Administrative Procedure Act for challenges to the existing plan solely on the basis that the plan does not incorporate new information. The only way to find further elements of plaintiffs' claims precluded would be if section 314 had repealed the relevant statutes as they apply to the entire subject of the litigation.

Plaintiffs characterize defendants as arguing, in effect, that section 314 brought about either the express or implied repeal of the judicial review provisions of the Administrative Procedure Act as applied to the Oregon BLM timber sales plans. Section 314 does not use the word "repeal" and mentions no other statutes. Obviously there can be no express repeal without reference to the "repealed" statute. *Sutherland Stat. Const.* § 23.07 (4th ed.).

If the defendants were to fall back to an argument that there is an implied repeal of NEPA, the Migratory Bird Act, and other statutes as they may pertain to judicial review of timber sales under the challenged plans, the implied repeal argument would run afoul of *TVA v. Hill, supra.* That case squarely rejected a contention that a continuing appropriation for a dam constituted an implied repeal of the Endangered Species Act as it related to construction of the Tellico Dam. Nothing in Section 314 implies the repeal of any law.

In attempting to distinguish *TVA v. Hill* and the entire question of implied repeal, the defendants claim that in *TVA v. Hill*, unlike our case, no statutory language whatsoever exempted the dam project from the requirements of the Endangered Species Act; only legislative history called for such exemption. Defendants also assert that the Supreme Court's opinion leaves no room for doubt that the Court would have sustained the exemption *if* the exemption could have been found in the words of the statute. 437 U.S. at 189–91, 195, 98 S.Ct. at 2299–2300, 2302. That may be true. But the statute before us contains no words that exempt timber sales from challenge. The statute merely precludes judicial review when the only basis upon which the plaintiffs seek review is that the plan did not incorporate newly discovered information (about owls) not available to the BLM when the plan was adopted.

At a trial, both sides may be able to show that owl habitat degradation was known before or after the plan was adopted. Such proof would shed light on the "new information" problem. However, that would not answer the last "provided how-

ever" clause of the section. That clause forces the decision maker to decide whether the challenge is to the plan or to particular activities. That decision must be made in the first instance by the trial court.

### Plaintiffs' Motion

The plaintiffs have asked us to consider the merits of their motion for summary judgment. The district court has not yet had the opportunity to consider the motion, and we decline to conduct an independent search of documents and reports to rule on a summary judgment motion.

We vacate the temporary injunction that was granted pending appeal, without prejudice to the plaintiffs' effort to obtain site specific injunctive relief from the district court if plaintiffs can establish a likelihood of success on the merits of their challenges of particular sales. We express no opinion upon the ultimate right to injunctive relief.

### Cross Appeal

■ On cross-appeal, NFRC and the Huffman & Wright Group (intervenors) argue that the district court erred in refusing to permit them to intervene as defendants as to the plaintiffs' NEPA claim. The district court found that the intervenors were not entitled to intervention of right on the NEPA claim because they lacked "an interest relating to the property or transaction which is the subject of the action," as required by Fed.R.Civ.P. 24(a)(2). On appeal, the plaintiffs do not challenge the district court's decision to allow intervention as to the other claims.

In our circuit,

[a]n order granting intervention as of right is appropriate if (1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties.

*County of Orange v. Air California,* 799 F.2d 535, 537 (9th Cir.1986) (quoting *U.S. v. Stringfellow,* 783 F.2d 821 at 826), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

The only remaining question is whether the intervenors have satisfied the second prong of the intervention test, the "interest" requirement, because no one denies that they have an economic interest in ensuring a continued supply of timber from BLM lands.[1]

We have rejected the notion that Rule 24(a)(2) requires a specific legal or equitable interest.... We agree with the D.C. Circuit that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.' " ... The "interest test" is basically a threshold one, rather than the determinative criterion for intervention, because the criteria of practical harm to the applicant and the adequacy of representation by others are better suited to the task of limiting extension of the right to intervene.

*County of Fresno v. Andrus,* 622 F.2d 436, 438 (9th Cir.1980) (citations omitted).

The district court relied upon the analysis of *Wade v. Goldschmidt,* 673 F.2d 182,

---

1. The plaintiffs urge us to find that a party seeking to intervene must have standing, as the D.C. Circuit has held. *See Cook v. Boorstin,* 763 F.2d 1462, 1470–71 (D.C.Cir.1985). However, we in the past have resolved intervention questions without making reference to standing doctrine. *See, e.g., Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 527–29 (9th Cir.1983). The Supreme Court recently declined to decide "whether a party seeking to intervene before a district court must satisfy not only the requirements of Rule 24(a)(2), but also the requirements of Art. III." *Diamond v. Charles,* 476 U.S. 54, 68–69 & n. 21, 106 S.Ct. 1697, 1706–07, n. 21, 90 L.Ed.2d 48 (1986) (observing that "[t]he Courts of Appeals have reached varying conclusions as to whether a party seeking to intervene as of right must himself possess standing"). Without an en banc review, we must follow the *Sagebrush Rebellion* analysis and decline to incorporate an independent standing inquiry into our circuit's intervention test. However, the standing requirement is at least implicitly addressed by our requirement that the applicant must "assert[ ] an interest relating to the property or transaction which is the subject of the action." *County of Orange,* 799 F.2d at 537 (quoting *Stringfellow,* 783 F.2d at 826).

185 (7th Cir.1982) (per curiam), in holding that the intervenors could not intervene as to the plaintiffs' NEPA claim.

In *Wade*, the Seventh Circuit rejected the attempt of a corporation, four families, and assorted city and county governments to intervene as defendants where the plaintiffs had challenged a proposed bridge and expressway project as violative of several federal statutes, including NEPA. *See id.* at 184–85. The *Wade* court found that the proposed intervenors did not possess the "direct, significant legally protectable interest in the property or transaction" required for intervention under Fed.R.Civ.P. 24(a)(2). *Id.* at 185.

> The only interest involved is of the named defendants, governmental bodies.... [T]he only focus that the ongoing litigation ... can have is whether the governmental bodies charged with compliance, defendants, have satisfied the federal statutory procedural requirements in making the administrative decisions regarding the construction which would directly affect plaintiffs' property. In a suit such as this, brought to require compliance with federal statutes regulating governmental projects, the governmental bodies charged with compliance can be the only defendants. As to the determination involved in this suit, all other entities have no right to intervene as defendants.

*Id.*

The intervenors argue that we should not follow *Wade* because it was based upon an unduly restrictive view of the "interest" test. However, the footnote relied upon by the intervenors suggests that the "interest" test will not be satisfied where a holding "will not affect a statute or regulation governing the applicants' actions, nor will it directly alter contractual or other legally protectable rights of the proposed intervenors." *Id.* at 189 n. 6. This accords with our circuit doctrine that Fed.R.Civ.P. 24(a)(2) requires no "specific legal or equitable interest," *County of Fresno*, 622 F.2d at 438, as modified by the Supreme Court's statement that the rule does require a "significantly protectable interest,"

*Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971).

We reject the intervenors' argument that *Wade* is inconsistent with two of our cases. In *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526–28 (9th Cir.1983), we found that the intervenor environmental groups, which had asserted "environmental, conservation and wildlife interests," had an adequate interest in the litigation to intervene on behalf of the defendant government officials where the plaintiffs had challenged the government's attempt to create a bird preserve. In *County of Fresno*, 622 F.2d at 437–38, we found that an organization of small farmers could intervene as defendants against a challenge to federal reclamation laws because the organization's members were "precisely those Congress intended to protect with the reclamation acts and precisely those who will be injured." The intervenors' claim here, unlike those made in *Sagebrush Rebellion* and *County of Fresno*, has no relation to the interests intended to be protected by the statute at issue—in this case, NEPA. Hence, *Wade* does not conflict with our circuit's precedents.

The district court correctly followed *Wade* in holding that the intervenors lack an adequate interest relating to the plaintiffs' NEPA claims where NEPA provides no protection for the purely economic interests that they assert. Although the intervenors have a significant economic stake in the outcome of the plaintiffs' case, they have pointed to no "protectable" interest justifying intervention as of right. *Donaldson*, 400 U.S. at 531, 91 S.Ct. at 542. We therefore affirm the district court's denial of the intervenors' motion to intervene as of right on the plaintiffs' NEPA claims. Upon remand, the intervenors are of course free to request the district court's permission to submit amicus briefing on the NEPA claims.

We reverse the judgment dismissing the action and remand for further proceedings. We vacate the stay pending appeal, without prejudice to any appropriate renewed efforts by the plaintiffs to obtain such tempo-

rary remedies, if any, as the district court may deem necessary and proper. We affirm the district court's denial of the motion by NFRC and the Huffman & Wright Group to intervene as defendants on the plaintiffs' NEPA claims.

REVERSED IN PART, AFFIRMED IN PART, and REMANDED.

NO PARTY TO RECOVER COSTS.